NEW YORK CENT. & H. R. R. CO. (COOKE v.). See Case No. 3,176.

NEW YORK CENT. & H. R. R. CO. (FRALOFF v.). See Cases Nos. 5,025 and 5,026.

## Case No. 10,204.

### NEW YORK DRY DOCK v. HICKS.

[5 McLean, 111.] [1]

Circuit Court, D. Michigan. June Term, 1850.

EVIDENCE — RECORDED INSTRUMENTS — CERTIFIED COPY — WITNESSES TO DEED AT COMMON LAW — EJECTMENT — SUIT BY FOREIGN CORPORATION — COMITY — LAND TAKEN FOR DEBT.

1. When an instrument is required by law to be recorded, a certified copy, the person being authorised so to certify, is evidence. The keeper of the records is the proper person to certify.

2. When a law declares that deeds for the conveyance of lands in the state shall be valid, when executed in any other state, conformably to the laws of such state, when recorded, copies, when duly certified, are evidence.

3. A deed at common law did not require witnesses.

4. An act required deeds to be recorded by the register of probate, but by law the records were transferred to the register of deeds; he may certify, as the records are legally in his custody.

5. In an ejectment the plaintiff has a right to show a legal title, however, acquired fairly.

1 [Reported by Hon. John McLean, Circuit Justice.]

6. A corporation may sue in a state, other than that which granted the charter, by comity.

7. And on the same principles lands when taken in security for the payment of a debt, or in payment, may be held. There is nothing in the nature of the association which prohibits this.

[Cited in American Mut. Life Ins. Co. v. Owen, 15 Gray, 494; Mayer v. Mayer, 30 N. J. Eq. 411; Thompson v. Waters, 25 Mich. 232.]

At law.

Barstow & Lockwood, for plaintiffs.
Mr. Campbell, for defendant.

OPINION OF THE COURT. This is a motion for a new trial, by the defendants' counsel, on the following grounds: 1. Because the transcript of the record of the deed from Isaac Carrier to Lathrop A. G. Grant, was improperly admitted in evidence. 2. Because the transcript of the record of the deed from the said Grant to William Hines, was improperly received in evidence, said deed having been recorded in the office of the register of probate, and said transcript being signed by the county register. 3. Because the deed from Seaman & Norton to plaintiff was improperly admitted in evidence. 4. Because the plaintiff, as a foreign corporation, cannot hold said lands under the laws of Michigan.

The first objection to the deed from Carrier to Grant was, that it was not entitled to be recorded. And if this be sustained, it will follow that the transcript of the record cannot be received as evidence. A certified copy is evidence only where the instrument is required by law to be recorded, or where the law expressly makes the copy evidence. This deed, it is said, was executed under the act of 1827 (Rev. Laws Mich. p. 258). The deed was recorded in 1832. The 1st section of the act provides: "That all deeds or other conveyances of any lands, tenements or hereditaments lying in this territory, signed and sealed by the parties granting the same, having good and lawful right and authority thereunto, and signed by two or more witnesses, and acknowledged by such grantor or grantors, or proved and recorded as is hereinafter provided, shall be good and valid to pass the same lands," &c. But the deed in question was executed in the state of New York, and under a law which gives effect to it as such, if executed as deeds are required to be executed by the law of New York. Seeing that deeds executed in the territory or state of Michigan, are regulated by statute, it cannot be important to inquire what constituted a valid deed at common law. It is known that at an early day in the history of England, it was not usual for the grantor to affix his signature to the deed, except by his seal, as but few could write. And especially was this the case in regard to witnesses. Their names, when required, were found endorsed on the back of the deed or were mentioned within it. The 7th section of the same act which requires

two or more witnesses to a deed, provides, that deeds for lands in Michigan made without the territory "shall be acknowledged, and proved, and certified according to and in conformity with the laws and usages of the territory, state, or country, in which such deeds or conveyances were acknowledged or proved, or in which they shall be acknowledged or proved, and all such conveyances are hereby declared effectual, and valid in law, to all intents and purposes, as though the same acknowledgments had been taken, or proof of execution made, within the territory, and in pursuance of the laws thereof; and such deeds and conveyances, so acknowledged or proved as aforesaid, may be admitted to be, and shall be recorded in the respective counties." This places a deed executed out of the state or territory, according to the laws of the place where it was executed, on the same footing, as if executed within the territory, and conformably to its laws, and such deeds may be recorded.

The objection to the authentication of the copy seems not to be sustainable. The law authorized the deed to be recorded at first by the register of probate, but the records kept by him have been transferred by law to the register of deeds, and they are now legally in his custody. Under such circumstances the keeper of the records may certify copies, the same as the register of probate might have certified, had he retained the custody of the original records. The law which makes copies evidence, when duly certified, is satisfied by the certificate of the person who has the legal custody of the records. No other individual could certify copies. This right appertains to him from the legal possession of the records. In the case of U. S. v. Percheman, 7 Pet. [32 U. S.] 85, the supreme court say: "We think that, on general principles, a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence."

The third objection is, that the deed from Seaman and Norton was improperly admitted in evidence, because the title set forth in said deed is inconsistent with the title sought to be traced to the said Seaman, and also because it appears by said deed that the title to said premises obtained through the sheriff's sale set forth therein, had been previously conveyed to Henry H. Elliott. And also because the plaintiff had no authority to take or hold the lands in controversy in this suit. Under the declaration the plaintiffs had a right to show a vested legal title, no matter how, if it was fairly acquired, or through whom it may have been derived. It is sufficient to show that the legal title was in Seaman, and that a quit claim was executed by him. Whether Norton had title or not is of no importance. The recital in the deed shows no title, inconsistent with that which the plaintiff claims through the quit claim of Seaman. It does not appear from the recitals as alleged, that the title had been conveyed to Elliott. The sheriff did not deed the land to Elliott—at most the recital can show nothing more than an equity. The objection that the plaintiff under its charter had no power to hold the land in controversy, is founded on the supposition, that a corporation must show the land was taken in its regular course of business, and within its corporate powers. Under the common law, a corporation, unless prohibited, may purchase and hold real estate. Ang. & A. Corp. 65; 1 Kyd, Corp. 69; 2 Kent, Comm. 277, 281. The restriction in England to this is found in the statutes of mortmain, which have not been enacted in Michigan. The right to take and hold real estate in connection and in furtherance of their corporate powers, is incidental to a corporation. A bank, without any express powers to that effect, may take and hold real estate as a banking-house, and also in furtherance of its business. Ang. & A. Corp. 65, 66, 87–92, 200; 5 Hammond [Ohio] 205; 3 Pick. 239. In the 1st section of the act of incorporation, a right to take and hold such real estate as may be necessary in the transaction of its business, is expressly given. Having this power, the corporation received the land in the exercise of its legitimate functions, as this will be presumed in the absence of proof to the contrary. 3 Wend. 94; 16 Mass. 102; 7 Serg. & R. 313; 7 Cow. 540; Virginia & Farmers' Bank v. Poitiaux, 3 Rand. [Va.] 136.

It is never necessary for a bank to allege, when suing on a note, that it was taken in the ordinary course of business. A corporation is never presumed to have violated its charter. 15 Pick. 310; New Haven Steamboat & Transportation Co. v. Vanderbilt, 16 Conn. 420; 19 Johns. 347; 11 Johns. 517. A note and mortgage appearing on its face to have been executed to the State Bank of Indiana, in its corporate name, will be presumed to be taken in conformity with its charter. Sparks v. State Bank, 7 Blackf. 469. In [Society for Propagation of Gospel v. Town of Pawlet] 4 Pet. [29 U. S.] 501, it is said that the general issue not only admits the general right to sue, in a corporation, but also to bring the action set forth in the declaration. And that case was brought by a foreign corporation, and the action was in ejectment. In the discharge of its corporate functions, a bank or any other corporation, is limited to the jurisdiction in which it is created, but it is not controverted, that a bank may sue to recover a debt in any other state. This is placed on the ground of comity, and the right may be exercised wherever it is not prohibited. This doctrine was laid down fully in the Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519. The right of suing in another state is not only recognized, but also the right to make contracts which are clearly within its powers, through comity. Any state may prohibit the making of such contracts or the prosecution of suits, but, until this is done, the comity will be presumed to exist.

By an amendment to the original charter

dated 29th of April, 1829, the New York Dry Dock Company was authorized, at such time and in such manner as the board of directors may deem expedient, to establish an office of discount and deposit in any part of the city of New York, and it was required to keep open for the transaction of business a banking-house in the Eleventh ward of the city of New York. Now in the exercise of this power a debt is incurred by a citizen of Michigan, and he executes a deed for land in that state in payment of the debt, or to secure the payment. We suppose that the contract would be a valid one, and the corporation could hold the land for the purposes for which it was conveyed. The function of banking could not be exercised in Michigan; but through comity bills of exchange may be sold by the bank in that state, and suits may be brought by the bank to recover on such contracts. And no principle of law is perceived against the validity of a deed for land given to the plaintiff, lying in the state of Michigan, whether it be conveyed to secure the payment of a debt or in satisfaction of it. Foreigners, in some of the states, may hold lands, but they do not descend to their heirs unless by statutory provision. But they stand in a different relation from citizens of the United States. Each citizen of a state may claim, under the constitution, "all privileges and immunities of citizens in the several states." A corporation aggregate is constituted of citizens who, for the purposes of their charter, are authorized to act in the name they have assumed, having the rights generally which may be exercised by an individual. Their functions as a corporation are limited to the business in which they are engaged, and to the jurisdiction under which they are organized. Still, representing the rights of citizens, there is nothing in their organization which should deprive them of the comity of collecting their debts by suits in other states, and of holding property therein received as security for their debts, or in payment of them. The holding of real estate in other states, in their corporate name, is no more the exercise of their corporate functions, than in bringing a suit in their corporate name, which is now a right not controverted. The states may deny this comity, but until it shall be denied, it is presumed to exist.

The motion for a new trial is overruled.

---

NEW YORK EYE INFIRMARY (MORTON v.). See Case No. 9,865.

NEW YORK GUARANTY & INDEMNITY CO. (UNITED STATES v.). See Case No. 15,872.

NEW YORK GUARANTY & INDEMNITY CO. (YARDLEY v.). See Case No. 18,125.

NEW YORK GUTTA PERCHA, ETC., CO. (GOODYEAR v.). See Case No. 5,580.

NEW YORK GUTTA PERCHA COMB CO. (POPPENHUSEN v.). See Cases Nos. 11,281–11,283.