## THE NATIONAL TRUST COMPANY
### *v.*
### THOMAS MURPHY and wife, and another.

1. A foreign corporation took a mortgage on lands in this state, to secure a loan already made to the mortgagor, on stock collateral, which became depreciated.—*Held*, that although its charter may not have authorized the taking of a mortgage in another state, as an original investment, yet the corporation might take such mortgage by way of additional security for such loan, and the mortgage, in its hands, is valid.

2. Where a receiver of a foreign corporation, complainant, has been appointed in another state, since the beginning of the suit, he may be substituted as complainant on such terms as may be imposed by the court, for the protection of creditors of such corporation, who are citizens of this state.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. D. Bedle*, for complainant.

*Mr. R. S. Green*, for defendant Murphy and wife.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage given August 26th, 1875, by Thomas Murphy and his wife, to the complainants, on land at Long Branch, in the county of Monmouth, to secure the payment of $45,000 on the 31st of the same month of August, with interest. Murphy and his wife, by their answer, admit the giving of the mortgage, and of the bond (which was made by Murphy, and is of even date with the mortgage), the payment of which the mortgage was made to secure; and they allege that, some time previous to the date of the mortgage, the complainants lent to Murphy the sum of $45,000, taking his promissory note for the payment thereof, with interest, with $50,000 worth of the capital stock of The Commercial Warehouse Company, a corporation under the laws of New York, as security, and that the bond and mortgage were subsequently

The National Trust Co. *v.* Murphy.

given at the solicitation of the complainants, and simply as a further security for the indebtedness for which they held the stock, and they insist that the complainants should be required to subject the stock to the payment of the debt before having recourse to the mortgage. They set up, as a defence to this suit, that the complainants, by their charter, had no power or authority to take or hold a mortgage on real estate in New Jersey or elsewhere than in the state of New York; and that, in taking the mortgage in question, they acted *ultra vires*, and they insist that, therefore, the mortgage created no lien on the land and premises therein mentioned. The only question presented on the hearing was, whether, in view of that objection to it, the mortgage is a valid security in the hands of the complainants.

It will have been seen that the answer alleges that the mortgage was taken merely as further security for a loan which had been made on the security of the stock of the warehouse company, and that the giving of the mortgage did not enter into the agreement for the loan. The proof is, that the loan was made in November, 1874; that it was made merely on the security of the note and warehouse company stock, and that the stock was, at that time, ample security therefor; that, in 1875, the warehouse company suspended, and thereupon, and because of the depreciation of the stock caused thereby, the complainants required Murphy to pay the debt, or give further satisfactory security for it. He, alleging that he could not conveniently pay the debt, undertook to make it perfectly secure by mortgage of his real estate at Long Branch (the mortgaged premises), at the same time stating that he expected soon to obtain the money to pay the debt by the sale of some other real property in the city of New York.

The charter of the complainants gives to their trustees a discretionary power of investing the moneys received by them in trust, in public stocks of the United States, or of any state, or the bonds or stock of any incorporated city in the state of New York, authorized by law, or on interest-

paying first mortgage bonds, or on bonds and mortgages on unencumbered real estate in the state of New York worth double the amount loaned thereon, and authorizes them to make loans secured by dividend-paying stocks of any corporation or company, with proviso as to the rates at which such stocks are to be taken as collateral. The evidence shows that the loan in this case was made in accordance with the charter. It was not an investment. The mortgage in suit was taken, according to the answer, as well as the proof, as further and additional collateral security, in view of the subsequent depreciation of the stock upon the security of which the loan was made. The charter contains no prohibition, expressed or implied, against accepting or holding mortgages of real estate situated elsewhere than in the state of New York as additional security. If it be conceded that it, by implication, forbids the making of any investment on mortgage of real estate not in the state of New York, it does not prohibit the company from taking further security by such mortgage for an investment already legitimately made. If the company should find that any of their investments, duly made, were in danger, they might, for aught contained in the charter to the contrary, take additional security, by mortgage of lands situated out of the state of New York. Any other construction would be unreasonable. Inasmuch as there is nothing in the charter to prohibit them from taking a mortgage of lands in this state, in such case, their rights, under such mortgage, would be recognized and protected here. *N. Y. Dry Dock Co.* v. *Hicks*, 5 *McLean* 111. By our statute (*Rev.* p. 195, § 99), mortgages to or by foreign corporations of lands in this state are declared to be good and valid here, both at law and in equity. But, as before remarked, the mortgage in this case was not taken to secure an investment, but to protect the complainants from loss by the depreciation of the securities taken in accordance with the charter, for security for the repayment of the loan. It is, undoubtedly, valid.

The complainants are entitled to a decree of foreclosure and sale.

It was alleged, upon the hearing, and it appears that, since the commencement of this suit, the complainants have been restrained by injunction, issued out of the supreme court of New York, from exercising any of their franchises, or doing any corporate act, and that a receiver of their property has been duly appointed. The complainants' counsel moves that the receiver be substituted as complainant in the stead of the company. The substitution will be made on such terms as this court may deem proper to impose for the protection. of any of the citizens of this state who may be creditors of the company, and for securing obedience on the part of the receiver to the orders of this court in respect to the money which may be collected by him in this suit.