Bartley, C. J.
The questions presented by this case for determination are as follows:
I. Does the appeal from the decree of the August term, 1850, open up the merits of the case touching the property as to which •the injunction had been dissolved?
II. Was the property, relative to which the injunction was dissolved, parcel of the realty, or was it chattel property ?
III. If the latter, and the property had not diminished in value in consequence of the injunction, but had been, after the dissolu *447 tion of the injunction, sold on execution, and the proceeds applied on the judgments, were the defendants entitled to any decree against the complainant for the amount of their judgments and the penalty ?
Of these in their order :
I. An appeal from .a decree is nothing else than a proceeding in the original cause, which continues the case, by vacating or suspending the decree, till the final hearing in the appellate court. The 55th section of the law of March 10th, 1831, directing the mode of proceeding in chancery (29 Ohio L. 81), authorized an appeal to the supreme court, from any final sentence or decree in chancery, in the court of common *pleas, on the terms prescribed. A final decree is one which determines and disposes of the whole merits of the cause before the court, or a branch of the cause, which is separate and distinct from the other parts of the case, reserving no further questions or directions for future determination ; so that it will not be necessary to bring the cause, or that sepai ate branch of the cause, again before the court for further decision. It is true that after final decree, defining and settling the rights of the parties, further orders or decrees may be ■necessary to carry into effect the rights settled by the final decree on the merits; such as a decree confirming a sale, or confirming the proceedings or report of a master carrying into effect the terms of the final decree. This, however, is a subsequent proceeding, and only auxiliary to, or in execution of, the final decree on the merits of the case. And an appeal from a decree, in this subsequent proceeding, brings nothing before the court except the proceedings which follow the final determination of the merits. Hey v. Schooley et al., 7 Ohio, 49 ; 5 Cranch, 313 ; 10 Wheat. 442. An interlocutory decree is one which leaves the equity of the case, or •some material question connected with it, for future determination. Where the further action of the court is necessary to give the complete relief contemplated by the court, upon the merits, the decree under which the further question arises is to be regarded, not as final, but as interlocutory. Cocke v. Gilpin, 1 Rob. Va. 20.
The case before us presents a double aspect for the subject-matter of a decree. The object of the bill was to' sell the mortgaged premises, and apply the proceeds of the sale to the payment of Hewitt’s indebtedness to complainant; and also to enjoin the proceedings under the judgments of the other creditors of Hewitt, and *448 prevent tbe sale of the machinery in the manufactory, which the-complainant claimed to be a part of the realty, and to be covered by his mortgage. After the dissolution of the injunction, the respondents, who were judgment creditors of Hewitt, sold the property as to which the injunction was dissolved, on execution. At the *May term of the common pleas, 1850, Teaff, the complainant, took his decree, upon one branch of the case, against Hewitt, for the amount of his debt, with interest and cost of suit, and, in default of the payment of the same, for the appraisement and sale of the mortgaged premises, including the steam-engine and boilers, as to which the injunction had not been dissolved. The-decree upon this branch of the case, at that term, was complete- and final; no further action of the court was requisite. The defendants did not appeal from this decree, but acquiesced in it; and this part of the case is not now in controversy, as it appears, between the parties.
But, as to the other branch of the case, the court at that term, extended the dissolution of the injunction to the defendants who-had answered the bill, subsequent to the preceding term, and referred the cause to a master to take testimony and report under special instructions at the next term, touching the value of the machinery as to which the injunction was dissolved, at the time the-injunction was granted; what it would have sold for on execution had no injunction been granted ; whether the same had been sold by the sheriff on execution after the dissolution of the injunction; and if so, upon whose executions, to whom sold, and for what amount; the amount of the judgments enjoined, their priority as to-liens, the amount yet due thereon, and the transfers of said judgments, if any, since their rendition, and to whom made, etc. The-main question touching the rights of the parties involved in this-branch of the case was left for the future action of the court on. the coming in of the report of the master.
The decision that the steam-engine and boilers, as to which the-injunction had not been dissolved, were fixtures and covered by the-mortgage, and the order for their sale as a part of the mortgaged premises, did not determine the rights of the parties in the property as to which the injunction had been dissolved. That property had been detached and sold on execution prior to this decree, and was not, therefore, in a situation to be appraised and sold under the '-¡‘mortgage, if even it had belonged to the realty. And *449 whether the complainant was in equity entitled to a decree against the defendants who had caused the property to be sold on execution, or if properly so sold, what decree, if any, the defendants were-entitled to against the complainant, was left for future determination. And at the August term, 1850, the court determined this-branch of the case, by finding that the defendants had not abandoned their levies, and by rendering a decree against the complainant for the balance on the defendant’s judgments with interest and the penalty of five per cent., besides the costs of the suit. From this decree the complainant might well appeal, and the appeal opens up-the whole merits touching this branch of the case, at least between him and the judgment creditors.
II. Was the property in controversy covered by the mortgage-on the realty, or was it chattel property ? This is the main question in the ease, and one of great importance.
The bill and answers, which are under oath, furnish the only testimony to be found in the case, as to the nature and description of the property, the mode of its annexation, and the purpose for which it was annexed to the realty, all of which appear in the statement-of the case.
It appears that the boilers were bolted upon timbers which were-planted in the earth, with a brick furnace built under them and adapted to their use, but they rested upon the timbers to which they were bolted, and by which they were supported rather than upon the brick work. The steam-engine was fastened upon timbers which rested for their foundation on a stone wall laid in the-earth. The other machinery, consisting of carding machines, spinning machines, power looms, etc., was connected with the motive power of the steam-engine by means of bands and straps, and attached to the building only so far as to confine the different pai'ts in their proper places for use. It appears from the answers, that such machinery as carding machines and spinning machines, and power looms, etc., is generally fastened to the floor by cleats- *or other similar modes of attachment, for the purpose of keeping the various parts steady and in a suitable position for use ; but that they are easily detached, as were these, without injury to the machinery itself, or the building ; and that such machinery is usually subject to be removed from one part of the building to another to suit convenience, and sometimes sold, and other machinery sup *450 plied to take its place, whenever the interest of the business for which it is used may require.
The doctrine of fixtures, by which the nature and legal incidents •of this property must be determined, is involved in no inconsiderable degree of uncertainty, and not settled by consistent and clearly •defined principles of general application. It rests upon a long ■course of judicial decisions, made at different periods of time and under a variety of circumstances, and running into numerous complex and conflicting distinctions arising out of the peculiar relation of the parties and the peculiar circumstances of each particular case; so that it has been found extremely difficult to reduce this branch of the law to any consistent and uniform system.
According to the decisions, an article may be a fixture constituting a part of the realty'as between vendor and vendee, which would not, under like circumstances, be such, as between landlord •and tenant; so also, an article may be such fixture as between heir and executor, which, under like circumstances of annexation, would not be such as between tenant for life and the remainderman or reversioner. And also, according to the decisions, an article affixed to the premises for purposes merely agricultural, may pass by a conveyance of the freehold as a fixture, which would not be such fixture under like annexation, if erected or affixed for the purposes of trade or manufacture ; and an article attached to the realty may be removable at one period of time as a chattel, which, with the •same annexation at another period, would not be removable, because it constituted a part of the realty. In some cases it has been ■determined that, in order to constitute a fixture, the article should *be so united by physical annexation to the land or to some substance previously belonging thereto, that it can not be detached without injury to the property; while in other cases, articles have been determined to be fixtures, and as such to pass by a conveyance •of the freehold, with but a slight attachment to the realty, and in ■some instances without any actual, but by simply a constructive attachment.
The term fixture itself, although always applied to articles of the nature of personal property which have been affixed to land, has been used with different significations, until it has become a term ■of ambiguous meaning. And this ambiguity which has attended the use of this word in various adjudications, and by different ■writers, has been productive of much of the uncertainty which has *451 perplexed investigations falling under this branch of the law. The term fixture has been used by various writers and in numerous reported decisions, as denoting personal chattels annexed to land which may be severed and removed against the will of the owner ■of the freehold by the party who has annexed them, or his personal representatives. Amos & Ferard on the Law of Fixtures, 2; Gibbon’s Manual of the Law of Fixtures, 2; Grady’s Law of Fixtures, 1; 2 Bouvier’s Institutes of American Law, 162; 2 Kent •Com. 344.
There may be some propriety in this definition of the term when confined in its application to the relation of landlord and tenant, or tenant for life or years and remainderman or reversioner, to which •several of the elementary authors have chiefly confined their attention. But it does not appear to express the accurate meaning of the term in its general application. An article attached to the realty, but which is removable against the will of the owner of the land, has not lost the nature and incidents of chattel property. It is still movable property, passes to the executor and not to the heir on the death of the owner, and may be taken on execution and sold as other chattels, etc. A removable fixture as a term of general application is a solecism—a contradiction in words. There does not appear to be any necessity or ^propriety in classifying movable articles which may be for temporary purposes somewhat attached to the land, under any general denomination distinguishing them from other chattel property. A tree growing ■upon the soil, or any other article belonging to the freehold, may. be converted into a chattel by a severance from the land.
It is an ancient maxim of the law that whatever becomes fixed to the realty, thereby becomes accessory to the freehold, and partakes of all its legal incidents and properties, and can not be severed and removed without the consent of the owner. Quidquid plantatur solo, solo cedit, is the language of antiquity in which the maxim has been expressed. The term fixture, in its ordinary signification, is expressive of the act of annexation, and denotes the change which has occurred in the nature and the legal incidents of the property; and it appears to be not only appropriate but necessary to distinguish this class of property from movable property, possessing the nature and incidents of chattels. It is in this sense that the term is used in far the greater part of the adjudicated cases. Co. Lit. 53, a. 4 ; 2 Smith’s Leading Oases, 114 ■ Chancellor Kent’s *452 note (a) 2 Kent’s Com. 345; Dudleys. Ward, Ambl. 113; Elwes v. Mawe, 3 East, 57. It is said that this rule has been greatly relaxed by exceptions to it, established in favor of trade, and also in-favor of the tenant as between landlord and tenant. And the attempt to establish the whole doctrine of fixtures upon these exceptions to the general rule, has occasioned much confusion and misunderstanding on this subject.
Amos & Ferard in their treatise on the law of fixtures, mention-the division of the subject into removable and irremovable fixtures, and give a definition of each class. (See Amos & Ferard on Fixtures, 11.) And they remark, “ that it is difficult to determine in which of the above senses it is most frequently employed.” This classification of fixtures may be essential to a correct understanding of the double sense in which the term has been frequently used' in the authorities ; but it would not seem to be needed for any other-purpose.
*The civil law has been commended for its simple and natural classification of-property into the obvious and universal distinction of things movable and things immovable, things tangible- and things intangible. Whatever would be movable property by the civil law, would fall under the denomination of chattels personal by the common law. And everything attached by the freehold, perpetui usus causa, belongs to the res immobiles of the civil law. Taylor’s Elements of the Civil Law, 475. This simple division of property seems to be founded in reason and the nature of things.
The great difficulty which has always perplexed, investigation upon this-subject has been the want, of some certain, settled, and un-. varying standard, by which it could be determined what amounts to a fixture, or what connection with the land will deprive -a chattel of its peculiar legal qualities as such, and make it accessory to-the freehold. Fixtures belong to that class of property which stands upon the boundary line between the two grand divisions of things real and things personal into which the law has classified property; a distinction not merely artificial, but founded on reason and the- . nature of things—regarding not only the natural qualities of immobility on the one hand, and mobility on the other, but also the legal constitution and incidents to which each class respectively is subject. In the great order of nature, when we compare a thing at the extremity of one class with a thing at the extremity of another, the *453 difference is glaring; but when we approach the connecting link between the two great divisions, it is often difficult to discover the precise point where the dividing line is drawn.
There are some matters having their foundation in things real, which are, nevertheless, by the principles of the common law, attended with some of the qualities of things personal, and therefore termed chattels real. Such are estates less than freehold, easements, rents, emblements, etc. These, however, are easily identified, and have no connection with fixtures. And again there are others which, though ^movable their nature and apparently falling within the definition of things personal, are, in respect of their legal qualities, of the nature of things real. Belonging to this class are heir-looms and things in the nature of heir-looms, which, by special custom, pass with the inheritance; also animals, ferce natures, not domesticated, so as to fall under the denomination of chattels, yet so confined to the realty as to become appurtenant to it; such as deer in a park, pigeons in a pigeon-house, conies in a warren, fish in a pond, etc.; also articles sometimes called fixtures on the principle of constructive attachment; such as the deeds and other papers which constitute the muniments of title to the land, the keys of a house, etc., which belong to the realty and pass with it, not upon the principle of fixtures, but upon the principle of being necessary and esssential incidents to it, and of no value abstracted from it. None of these articles acquire their legal qualities upon the principle of a fixture.
A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it. But the precise point in the connection with the realty, where the article loses the legal qualities of a chattel and acquires those of the realty, often presents a question of great nicety and sometimes difficult determination. And a review of the authorities, from the time of the year books down to the present period, does not furnish any one established and certain criterion of universal application, by which this line of demarcation can be clearly ascertained and pointed out. It may, however, be useful, in the determination of this case, to examine the authorities and endeavor to extract from them the most uniform, reasonable and consistent principle, as a standard by which a fixture can .always be determined.
If there be any thing well settled in the doctrine of fixtures, it
*454 is this, that to constitute a fixture, it is an essential requisite that the article be actually affixed or annexed to the realty. The term, itself imports this. Walker v. Sherman, 20 Wend. 636. But the mode or degree of the annexation *whieh is essential, is a matter about which the authorities are greatly in conflict. Amos &. Ferard, in their work above referred to, page 2, lay down the rule as follows: “ It is necessary, in order to constitute a fixture, that the article should be let into or united to the land, or to substances previously connected therewithThe Manual of Gibbon and the work of Grady on fixtures, are to the same effect, and numerous adjudicated cases are referred to by these elementary writers, establishing the-same doctrine. A number of the authorities, both English and American, decide, that to give chattels the character of fixtures, and deprive them of that of personalty, they must be so firmly affixed to the real estate that they can not be removed without injury to-the freehold, by the act of removal and apart from the abstraction of the thing removed. Charrar v. Chauffeete, 5 Denio, 337. This-doctrine, however, does not furnish a criterion of uniform application, or one which will bear the test of examination. Mill-stones-in a mill, and even the water-wheel, and a great variety of other articles well established by authority and universally admitted to be fixtures, may often be removed without any actual injury to the structure or building by the act of removal. Fences, which are-undeniably fixtures, and so admitted by all the authorities referring-to them, although actually annexed to, and in connection with the-land, are yet not let into the ground or fastened to'any thing which is imbedded into the earth. The doors, windows, window-shutters, etc., of a mansion house may be raised and removed without any actual or physical injury either to the building or the article removed; so, also, in a mill, with the mill-stones, hoppers and bolting apparatus, as usually fixed in a mill; yet it has never been questioned that these articles are fixtures.
There is another class of authorities in which it is laid down that the true test of a fixture is the adaptation of the article to the use■ or purpose to which the realty is appropriated, however slight its physical connection with it. Farrar v. Stackpole, 6 Greenl. 157; Gray v. Holdship, 17 Serg. & R. 413. And some cases have gone so far as to *make this the only test, and even dispense with actual or physical annexation. Voorhis v. Freeman, 2 Watts & S.. 114 ; Pyle v. Pennock, Id. 391.
*455 This rule is in conflict with those authorities which make the mode of the physical annexation the test, and it will not bear examination as a criterion of general application. If adaptation and necessity for the use and enjoyment of the realty be the sole test of a fixture, then the implements and domestic animals necessary for the cultivation of a farm, and a great variety of oth.er articles-subject to the use of the land or its appurtenances, which never have been and-never can be recognized as such, would be fixtures. It would utterly confound the rule by which the rights of the vendor and vendee, heir and executor, etc., have been heretofore governed.
In the case of the Despatch Line v. Billamy, 12 N. H. 205, the court expressed the opinion that actual annexation to the freehold and adaptation to its purpose must both unite in order to render personal property incident and appurtenant to real estate.
In some of the authorities, the intention of the party making the annexation, is laid down as the true test of a fixture. Winslow v. The Merchants’ Ins. Co., 4 Metc. 306.
Mr. Dane, in his Abridgement of American Law, vol. 3, p. 156r remarks: “ It is very difficult to extract from all the cases as to fixtures in the books any one principle on which they have been decided, though being fixed or fastened to the soil, house or freehold, seems to have been the leading one in some cases, yet not the only one.” And he adds, in reference to this matter : “Not the mere fixing or fastening is alone to be regarded; but the use, nature and intention.”
From the examination which I have been enabled to give to this-subject, and after a careful review of the authorities, I have reached the conclusion that the united application of the following requisites will be found the safest criterion of a fixture :
*1. Actual annexation to the realty, or something appurtenant thereto.
•2. Appropriation to the use or purpose of that part of the realty with which it is connected.
3. The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.
This criterion furnishes a test of general and uniform application ; *456 one by which the essential qualities of a fixture can, in most instances, be certainly and easily ascertained, and tends to harmonize the apparent conflict in the authorities relating to the subject. It may be found inconsistent with the reasoning and distinctions in many of the cases ; but it is believed to be at variance with the ■conclusion in but few of the well-considered adjudications.
Adopting this as the criterion, there will be found no occasion for giving an ambiguous meaning to the term fixture; no occasion for denominating an article a fixture at one period of time, which with the same annexation would not be such at another period ; no ■occasion for determining that to be a fixture as between vendor and vendee which under like circumstances would not be such ás between landlord and tenant; or finding that to be a fixture as between heir and executor which under like circumstances of annexation would not be such as between tenant for life and remainder-man or reversioner. Sturges v. Warren, 11 Vt. 433. It is true the time of the annexation and the relation and situation of the parties may constitute very important considerations in ascertaining the intention and object of making the annexation. Why is a tenant for life, or for years, or at will, favored with the right of removing articles which he attaches to the land during his term? The supreme court of Massachusetts say, in Whiting v. Broston, 4 Pick. 311: “ There seems to be no doubt that, according to *the later decisions in England and several cases in our own • books, a tenant for life, for years, or at will, may, at the expiration of his estate, remove from the freehold all such improvements as were •erected or placed there by him, the removal of which will not injure the premises or put them in a worse plight than they were in when he took possession.” All that is required of a tenant is to .leave the land in as good condition as it was when he received it. When, therefore, a tenant erects expensive structures for carrying •on his trade or business, which can be removed without their destruction or material injury to the freehold, the presumption is a rational one, that it was not the intention of the tenant to make them permanent accessions to the freehold, and thereby donations to the owner of it. The intention of the tenant, clearly inferable from his situation and relation to the landlord, is the real foundation of the right of removal with which he has been favored. It is true, other reasons of groat subtlety and considerations of public policy have been frequently assigned for this right of - removal, but *457 ■;they are doubtless attributable in some degree to a laudable desire ~on the part of the courts to carry out the real intention of the party.
It is said that the right of removal must be exercised by the tenant before the expiration of his term, or, in some cases, within a reasonable time afterwards; that the tenant can remove things which he has attached to the land for the purposes of trade or manufacture where not contrary to some prevailing custom, or where it can be done without material and essential injury to the freehold,
• or where the erections in themselves were strictly chattels in their nature before they were put up, and can be removed without being entirely demolished or losing their essential character or value. (Amos & Ferard on Fixtures, 40, 44.) And these circumstances furnish considerations bearing upon the intention of the tenant in making the erections, and their temporary nature and want of adaptation to the permanent use and enjoyment of the freehold, and .show the application of the criterion here adopted.
*The rule requiring actual or physical annexation to the realty is not affected by the few articles sometimes said to belong io the realty upon the principle of constructive annexation, but which, as has already been observed, are not in fact fixtures, but mere incidents to the freehold, and pass with it upon a different principle from that of a fixture; but the extent and mode of the annexation must depend much upon the nature of the article itself, the use to which it is applied, and other attending circum- • stances.
The rule requiring adaptation to the use or purpose of the realty was recognized in some of the earliest authorities. In the case of Lawton v. Salmon, 1 H. Black. 259, Lord Mansfield, on a question between heir and executor, respecting salt pans attached to the land and connected with salt works at a salt spring, declared the .articles fixtures upon the principle that they were accessories to the freehold and necessary to its use and enjoyment. And it has been .adjudged in numerous cases, that where an article attached to the realty is accessory to a matter of a personal nature, it should be considered itself as personalty and removable as such. Lawton v. Lawton, 3 Atk. 14; Dudley v. Ward, Amb. 113. Whore articles were attached to the land for the purposes of trade or manufacture, which purposes were considered matters of a personal nature, the .articles have been declared not to be fixtures. In the case of Elwes v. Mawe, 3 East. 54, Lord Ellenborough reviewed the eases from *458 the time of the year books, and came to tho conclusion that there-was a well-founded distinction between articles annexed to the freehold for the purposes of trade or manufacture and those made for the purposes of agriculture—the right of removal existing to a much greater extent in case of the former than in that of the latter. This distinction, however, has been strongly questioned by high authority in this country. Van Ness v. Pacard, 2 Peters’ U. S. 137 Whiting v. Braston, 4 Pick. 310. It was upon this doctrine, which was recognized by Lord Ellenborough, that the rule was laid down, that articles annexed to the realty, for a *mixed purpose of the-freehold and of personalty, were removable, and not fixtures. Hence it is said that Lord C. B. Comyns, as between heir and executor, decided that a cider mill firmly fixed in the ground was-accessory to a species of trade, and, therefore, not a fixture. This-distinction, however, as to articles annexed to the realty for a mixed purpose, does not appear to have been consistently recognized in this country.
Numerous exceptions to the rule that whatever is attached to the-realty becomes a part of it, have been adopted in favor not only of trade and manufacturing, but also in favor of matters of ornamental and domestic use. Some of these exceptions have been based upon public policy, some upon the nature of the article itself, and. some upon the ground of the articles being accessory to matters of a personal nature and not strictly subservient to the use and purposes of the freehold.
But if the third requisite of a fixture here adopted had been applied in the numerous cases of exceptions in favor of tenants, also-in favor of trade and manufacture, and in favor of matters of ornament and domestic convenience, which fill so much space in the books, there would have been but little difficulty in determining-that they were not fixtures. In all these cases denominated exceptions, the article could invariably have been removed without essential injury to the freehold or the article itself. In no case is a fixture created without the apparent intention of the party making' the annexation to make a permanent accession to the freehold. And whether articles are personal property or fixtures must be determinable and plainly appear from an inspection of the property itself, taking into consideration its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and in some instances, perhaps, other attending circum *459 stances, indicating the intention to make it a temporary attachment- or a permanent accession to the realty. And, inasmuch as it requires a positive act on the part of the person making the annexation to change the ^nature and legal qualities of a chattel into those of a fixture, the intention to make the article a permanent accession to the realty must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities-of the article are not changed, and the article must be deemed a chattel. In some instances, the intention to make the ai’ticle a fixture may clearly appear from the mode of the attachment aloner as where a removal can not be made without serious injury to the property by the act of severance. JBut where the attachment is but slight, and does not enter into the physical structure of the realty, this intention must be gathered from the nature of the article and the other attending circumstances.
The criterion of a fixture above mentioned must, however, be subject to qualification in some respects. Whatever would otherwise be the rights of the parties connected with an article which has been attached to the realty, they are liable to be controlled by an established custom or the special agreement of the parties. The parties are presumed to be cognizant of an existing usage or custom, and to act with a tacit reference to it. And an article attached to the land may be a fixture or a chattel, according to the special agreement of the parties. Naylor v. Collings, 1 Taunt. 19 ; Perry v. Brown, 2 Stark, 403 ; Earl of Mansfield v. Blackburn, 6 Bing. (N. C.) 426.
By an application of the criterion here adopted to the case before the court, there is no difficulty in determining the character of the property in controversy. There was here actual connection with the realty, but it was slight. The bands and straps by which the machinery was attached to the motive power of the steam engine and boilers could easily be thrown off, and the cleats or means used to keep the machinery steady and in its proper place for use were such as to admit of its removal without injury to any property, or even inconvenience. The use or purpose to which the machinery was applied was that of a trade or the ^business of manufaeturing, in favor of which the authorities have made numerous exceptions to the principle of fixtures.
It may be said that the building in which the machinery was placed was parcel of the freehold, erected and used for the purpose of manufacturing, and that the machinery was accessory to it, and *460 therefore adapted to the use to which tbiat part of the realty with which it was connected was appropriated. But in truth the building itself was rather the accessory than the principal. It was in fact accessory to the business or pursuit carried on by the machinery within it, and if not firmly affixed to or founded in the earth in ■such manner as to show it to be a permanent structure and intended for a permanent appropriation of that part of the land to which it was attached, it would be movable property itself. This is supported by high authority. See Elwes v. Mawe, 3 East. 38, and cases there referred to. The business of. manufacturing, it has been said, is a pursuit personal in its character, and not strictly subservient to real estate, or essential to the enjoyment of the freehold or inheritance in land. Upon this ground arose the distinction for a time recognized by the courts between articles for .agricultural purposes and those erected for the purpose of trade or manufacture.
I would not be understood as saying that the use to which the property in controversy in this case was applied was decisive of its legal character. A manufacturing establishment, including all its essential parts, may unite in the same pui’suit and for producing the same result, portions of real estate with articles of personal property, retaining all the essential qualities of chattels. In the various and complex pursuits of man, real estate and chattels are very frequently united in their application to the same use without •either being made accessory to the other, while both united are made subservient to one common use or purpose.
That this machinery was not intended as a permanent accession to the freehold, and immovable as such, is so clear as scarcely to ■call for remark. Neither the mode of the annexation nor the use to which it was applied, indicated any design to change the character of the property. The nature *of the property itself, the customary removal of it from place to place, its liability to be taken away or disposed of, and other articles of the same kind supplied to take its place, show that it was not intended to be made a permanent accession to the freehold, and therefore was not covered by the mortgage of the complainant.
It has been said that the description in complainant’s mortgage covered this property even if it were personalty. It is true, that where a manufactory or a mill is conveyed or delivered by any general name or description which embraces all its essential parts *461 as such, manufactory or mill, the machinery and all the necessary parts of the establishment pass, whether affixed to the freehold or' not. Thus things personal in their nature, but fitted and adapted to be used with real estate, and essential to its beneficial enjoyment in such use, may pass with the realty by a conveyance and delivery under such a description, which would not pass by an ordinary conveyance of the land with its appurtenances. But, in this case, the language in complainant’s mortgage, “on which is erected a woolen manufactory,” added to the description of the mortgaged premises by the number of the lot, etc., is descriptive of the realty' merely.
It is claimed on the part of the complainant that the common law rule as to fixtures has been somewhat changed by the progress-of society, and the advancement in the application of machinery to-the purposes of manufactures, so as to create a different criterion of a fixture in a manufactory or a mill, from that which applies to-articles attached to the realty under other circumstances. And. upon this ground it is claimed that all the essential parts of a mill or manufactory, whether actually attached to the realty or not, become fixtures, and as such pass by a conveyance of the freehold.. This doctrine, which seems to have been recognized in several of the states, derives its origin chiefly from the cases of Farrar v. Stackpole, 6 Greenl. 154, and Voorhis v. Freeman, 2 Watts & S. 116. The former case does not sustain the position assumed. That was ■ trover for a mill, *chain, dogs, and bars attached to a sawmill. The plaintiff claimed the property by virtue of a deed conveying a “saw-mill with the privileges and appurtenances,” upon the-grounds: 1st, that the articles, whether chattels or fixtures, formed essential parts of the saw-mill, and passed by .the sale and conveyance of it as such; and 2d, that they were parts of the saw-mill and went with it by general and uniform .usage. The court below ruled against the plaintiff on the first ground, but left the case on the second ground to the jury, which found for the plaintiff. This’, judgment was sustained by the supreme court, yet expressing an opinion at variance with the court below as to the first ground. Although some of the reasoning in this case was intended to show that the articles in question were fixtures, yet all that was settled by the adjudication was that the articles, whether fixtures or chattels, passed as essential parts of the saw-mill and its appurtenances;conveyed as such.
*462 The case of Voorhis v. Freeman, although professedly based on the principle settled in the case in the State of Maine, goes still further, and determines that machinery which is a constituent part ■of a manufactory, to the purposes of which the building has been .adapted, and without which it would cease to be such manufactory, is a part of the freehold, although not actually affixed to it or in physical connection with it. This case was trover for the conversion of one hundred and six soft and chilled rolls belonging to the machinery of an iron rolling mill in the city of Pittsburg. The plaintiff claimed under a sale on execution as chattel property, and the defendant under a previous sale under a levari facias on a mortgage in which the premises were described as “ a lot of ground with one iron rolling mill establishment situate thereon, with the buildings, apparatus, steam-engine, boilers, bellows, etc., attached to the said establishment.” And the questions simply were whether they did not pass by the descriptive terms of the mortgage. The court held that, if chattels, the articles would have passed by force of *the word “apparatus ” in the description of the premises. But Chief Justice G-ibson, reaching the conclusion that “ no distinctive principle prevades the cases universally on the subject of fixtures,” repudiates the criterion of physical attachment as limited in its range and productive of contradiction, adopts the doctrine of constructive attachment, and attempts to establish a new criterion •on the ground of public policy, as applicable to the machinery and implements in a manufactory. The only authority referred to by the learned chief justice, which even tends to sustain him, is the case of Farrar v. Stackpole; and instead of explaining how this new class of fixtures is to become incorporated into the realty and .acquire its nature and incidents, he endeavors to maintain his position upon the ground of public policy, holding that it would be “ ruinous to the manufacturer in Pennsylvania, where a statute directs that real estate shall not be sold on execution before the rents, issues, and profits shall have been found insufficient to satisfy the ■ debt in seven years,” to allow “a suffering creditor” to seize on execution the loose machinery and implements in a mill, and thus interrupt a “ thriving business.” Such is the principle of public policy, by which loose and movable property is to be made parcel •of the freehold and subjected to what remains of the more permanent and unbending rules of the feudal tenure. Courts have .generally declared it to be the policy of the law to guard against *463 -all obstacles in the way of creditors. And this is perhaps the first-instance in which movable property was, by constructive annexation, adj udged parcel of the realty for the avowed reason that it ought-to be placed beyond the convenient reach of the legal process of •creditors. The reasoning of Chief Justice Gibson might be legitimate in legislation, but it is not appropriate in judicial proceedings.
To what consequences would such a criterion lead if fully carried •out? A cabinet maker erects a building for a cabinet shop, and furnishes it with all the necessary machinery, implements, tools, etc., for an establishment for the manufacture of furniture, some of which maybe attached to the ^building. All the machinery, tools, implements, etc., whether actually attached to the building or not, and essential and necessary for the business of the establishment to which the building is adapted, and without which it would not be a perfect and complete establishment of the kind, would be parcel of the freehold. The application of the same rule would convert the benches and essential implements of the shoemaker’s shop, the vises, hammers, and machinery of the copper-smith and tinner, and of other mechanics and manufacturers into realty. And inasmuch as some carry on their business on a much larger scale than others, a question of no little difficulty would arise as to the quantity of the loose implements and machinery which should be deemed essential to make it a complete establishment, and what might be rejected as unessential, and therefore chattels.
It may be inconvenient to the mechanic or the manufacturer to have the movable implements and machinery in his shop taken away upon execution. The same inconvenience, however, may be experienced by the agriculturist who may be prevented from putting in bis crops by a similar removal of his team or farming utensils.
Several decisions have been subsequently made in Pennsylvania, and also in some of the other states, recognizing the doctrine of the case of Voorhis v. Freeman, but the great weight of authority both in England and in the United States is against it.
We are told by Lord Hardwicke, in the case of Lawton v. Lawton, 3 Atk. 15, that since the time of Henry the Seventh, the courts have, from considerations of public policy, been relaxing the strict construction of the law relating to fixtures, and that many articles *464 attached to the realty are now movable, which formerly were considered parcel of the freehold. The progress of society, and improvements in business and commerce, have constantly tended ta unfetter property, and especially all movable property, from the-rigid rules of the feudal tenure. And no sound considerations of public policy can justify any retrograde change in the legal qualities of any kind of movable property by constructive attachment. *to the freehold, for the purpose of favoring any one particular pursuit or business.
Swift v. Thompson, 9 Conn. 63, is a leading case in Connecticut, in which it was decided that the machinery of a cotton factory consisting pai’tly of implements in no way attached to the building,. and partly of spinning frames standing upon the floor and kept in their places by cleats about their feet, nailed to the floor, and partly of other machinery fastened by wood-screws passing into the floor, all of which could be removed without injury to the building or' machinery, was personal property.
The case of Gale v. Ward, 14 Mass. 352, is a leading case in Massachusetts, in which it was held that carding machines in a woolen factory, not nailed to the floor, nor in any manner attached to the building except by the leather band which passed over the wheel or pulley to give motion to the machines, which band could be slipped off by hand, and was taken off and the machines removed from time to time, when repaired, were personal property. Each one of these machines, was so heavy as to require four men to move it on the floor, and too large to be taken out at the door, but so constructed as to be easily unscrewed and taken in pieces. In deciding this case, Parker, Oh. J., said : “ They must be considered as peronal property, because, although in some sense attached to the freehold, yet they could easily be disconnected, and were capable of being used in any other building erected for similar purposes. It is true that the relaxation of the ancient doctrine respecting-fixtures has been in favor of tenants against landlords, but the-principle is correct in every point of view.”
It has been said that the authority of this case was somewhat shaken by the case of Winslow v. The Merchants’ Ins. Co., 4 Metc. 306, in which a steam engine, boilers, etc., and other machinery adapted to be moved by them, and connected with them, were decided to be fixtures. But from the peculiar structure of this machinery, the mode of its annexation, as well as its adaptation to- *465 the use of the building, the court determined that it was permanent in its character, and intended as an accession to the realty. And Shaw, Ch. *J., in giving the opinion of the court, expressly refers to this case of Gale v. Ward in terms of approval.
In the ease of Cresson v. Stout, 17 Johns. 116, Mr. Justice Platt expressed the opinion that frames in a factory for spinning flax and tow, though fastened by upright pieces extending to the upper-floor and cleats nailed to the floor round the feet, would not be considered fixtures.
In Sturgis v. Warren, 11 Verm. 433, machinery in a woolen factory affixed to the building in the usual manner with nails, screws, and cleats was determined to be personal property.
The same principle was settled in Trapps v. Harter, 3 Tyrwhitt, 604, and in Duck v. Braddyl, McClelland, 217, 13, Price, 455.
Walker v. Sherman, 20 Wend. 636, is a leading case in New York, in which it was decided, after a very full review of the authorities,, that the removable parts of the machinery of a woolen factory, consisting of two double carding machines, a picking machine, shearing machine, spinning machine, looms, etc., were personal property. In this case it was conceded that the other machinery of the factory, consisting of the water wheel, fulling mill, dye-kettle, press and tenterbars were fixtures or parcel of the realty.
The recent cases of Vanderpoel v. Van Allen, 10 Barb. S. C. 157, and Buckley v. Buckley et al., 11 Barb. S. C. 43, decided in New York, are not understood as varying the docti’ine laid down in the case of Walker v. Sherman, and Cresson v. Stout.
Substantially the same ground has been taken in the -State of Indiana. In the case of Taffe v. Warnick, 3 Blackf. 111, it was held that a carding machine situated in a building erected for the purpose of carrying on the carding business, standing on the floor-in its usual place of operation, but not fastened to the building, is persona] property. And in Sparks v. The State Bank, 7 Blackf. 469, it was held that a steam engine and boiler placed on a stone foundation, with a brick chimney at one end of the boiler, situated in a *tanyard to facilitate the business of tanning, and used for several years, but not so fixed but that they could be removed without injury to the building with which they were connected by braces, were fixtures.
Fixtures in a manufacturing establishment must be governed by the same criterion which applies to fixtures in other situations. *466 'The machinery and implements in such an establishment, although useful and even essential for the business carried on, which are not permanently affixed to the ground or the structure of the building, and which can be easily removed without material injury to the building or the articles themselves, and their place supplied by other articles of a similar kind, are not fixtures but personal property. ■ But that portion of the machinery in such an establishment which is firmly affixed to the earth orto the structure of the building, and which from its nature, mode of attachment, use, and the relative situation of the party placing it there, was plainly intended to be permanent, is parcel of the freehold.
The question as to the steam engine and boilers is not directly involved in this case, the court not being called upon by the defendants to interfere with the decree of the May term for the sale of the mortgaged premises, from which no appeal was taken. The ■application of the principle, however, adopted in this ease, plainly shows these articles to have been fixtures, and therefore parcel of ■the mortgaged premises. They were bolted and permanently fixed upon timbers, and stone and brick foundations laid in the earth, which were erected for them. The building itself was permanent ;and designed and used for a manufactory, and these articles of a ponderous character adapted to the production of the motive power ■of the establishment, were firmly affixed to the structure of that portion of the freehold appropriated to the purposes of the business, .and clearly intended to be permanent. This is sustained by the ..•case of Allison v. McCune, 15 Ohio, 729, where the court determined that a steam engine set on timbers laid on raised walls on the top of the ground, and the machinery of a grist and saw-mill *attached by coupling shafts, drivers and straps, shown to be placed there for permanent use, were adjudged to bo parcel of the freehold. And to the same effect is the case of Powell v. Monson and Brimfield Man. Co., 3 Mason, 347, in which Mr. Justice Story has elaborately examined the subject of fixtures.
If it were necessary for the purpose of sustaining the dissolution ■of the injunction by the common jileas, we should further hold, that the parties having treated the property in controversy as personalty by the execution of the chattel mortgage and other acts, showing that the articles were not intended to be made fixtures, the complainant could not now have a decree for them as having been par■cel of the freehold.
*467 III. The injunction having been properly dissolved as to a part •of the property only, and that too which had not diminished in value in consequence of the injunction, and which was sold on execution afterwards, and the proceeds of the sale applied upon the judgments, no decree should have been rendered against the complainant for the amount of the judgments at law and the penalty.
The 4th section of the act of March 12, 1845, directing the mode of proceeding in chancery under limited injunctions, provides that, on the dissolution of any injunction allowed to enjoin a levy upon •or to stay the sale of any particular property by virtue of a levy, ■“ the court shall render a decree for the party enjoined to an amount not exceeding the value of the property levied upon, nor exceeding the amount of the judgment at law and interest thereon and the costs accruing in such injunction proceedings, together with five per -centum penalty on such value or judgment and interest,” etc.
Courts are not to be confined to the letter of the law in giving it a construction. The maxim hceret in litera hceret in cortice is not to be forgotten. A statute must be construed with reference to the subject-matter of it, and its real object and true intent. The provision of law referred to was intended to further the administration of justice and equity. The only penalty imposed is that of the five per centum. *The decree authorized for an amount not exceeding the value of the property nor exceeding the amount of the judgment, is not by way of penalty, but with a view to an equitable compensation for the loss which may bo sustained by moans of the injunction, and operates simply as accumulative security so far as it goes for the payment of the defendant’s debts, which could be but once collected. To allow a defendant who had abandoned his levy and obtained satisfaction of his judgment by the sale of other property, or to allow a defendant who had, after the dissolution of the injunction, proceeded and obtained satisfaction, by the sale of the property enjoined, to come in afterwards and take a decree for the full value of the property levied on not exceeding the amount of the judgment, and interest thereon, etc., together with the penalty ■of five per centum, would be, to say the least of it, grossly inequitable.
In this case, the injunction was dissolved only as to a part of the property, and continued as to the balance. And it appears that the property was not diminished in value by means of the injunction, and that the defendants proceeded after the dissolution of the in *468 junction on their judgments at law and sold the property on execution, and applied the proceeds on their judgments. Under these-circumstances the defendants were not entitled to the decree against the complainants which was rendered in the court of common pleas,, either for the penalty or the amount of their judgments. Erom this decree the complainant having properly appealed, it is ordered that the defendants, in whose favor the decree was taken in the common pleas, pay the costs accruing on the appeal, and that the; cause be remanded.'