TAFFE v. WARNICK.

A carding machine, situated in a building erected for the purpose of carrying on carding,—ready to be put in operation, and standing on the floor in its usual place of operation, but not fastened to the building,—is personal property, and subject to an execution issued by a justice of the peace.

APPEAL from the *Clark* Circuit Court.

*Wednesday, November 28.*

STEVENS, J.—An action of trover for a carding machine. Plea not guilty, a jury trial, and a verdict and judgment for the defendant. The Court, on motion of the defendant, charged the jury, "that if they believed, from the evidence, that the carding machine in question was situated in a building erected for the purpose of carrying on carding, so as to be ready to be put in operation and to do business, although it was in no manner fastened or fixed to the building, except as it stood upon the floor in its usual place of operation,—it was not liable to be levied on and sold as personal property, by virtue of an execution issued upon the judgment of a justice." To which charge the plaintiff excepted.

The only question before us is, whether the instructions of the Court to the jury were correct?

This is a vexed question, and no certain decision or fixed rule on the subject can be found in the books. It is, perhaps, not possible to establish any certain principle, that can be easily applied to every case that may arise. There are many chattels, which though they be of a moveable nature, yet, being necessarily attached to the freehold, go along with it in the same path of descent or alienation. These questions, generally, arise between five classes of persons: 1. between heir and executor; and there the rule obtains with the utmost rigour in favour of the inheritance, and against the right to consider, as a personal chattel, any thing which has been affixed to the freehold; 2. between the executor of the tenant for life, and the remainder man or reversioner; and here the right to fixtures is considered more favourably for the executors; 3. between vendor and vendee; and between these, the rule is as between the heir and executor; 4. between landlord and tenant; and here the claim to have articles considered as personal property,

is received with the greatest latitude and indulgence; 5. between debtor and creditor; and here there appears to be no rule fixed. Which of the above rules is to be applied between debtor and creditor, or whether either of them, is a question of much doubt. We, however, incline to think, that the rule between landlord and tenant comes nearer to the principle that ought to govern, than either of the others.

Between executor and heir, all manner of fixtures, such as shelves and fixtures in a house, posts, rails, and inclosures, pigeons in a pigeon-house, deer in a park, fish in a pond, machinery of all kinds fixed in a house for carrying on a trade or manufacturing, vats, copper stills, and distilling apparatus, partitions, potash and soap-boilers' kettles, salt pans, &c. go with the freehold. But in modern times, for the encouragement of trade and manufactures, as between landlord and tenant, most of these things are now treated as personal property, which seem, in a very considerable degree, to be attached to the freehold. Thus, things set up by a tenant, in relation to his business or trade, as vats, coppers, tables and partitions belonging to a soap-boiler, chimney-pieces, wainscots, cider-mills and press, buildings resting on blocks and not let into the soil, bark-mills, fire-engines, post wind-mills, machinery for spinning and carding, though nailed to the floor, copper stills and distillery apparatus, though fixed,—are held to be personal property, between landlord and tenant.

If the rule between heir and executor should be applied between debtor and creditor, it would undoubtedly open a door to much fraud and injustice. The creditor of a tenant would be prohibited from executing and selling any of the numerous articles and things first above enumerated, because between heir and executor they are not personal property, but are considered as part of the landlord's freehold. But the tenant himself, whenever he desired so to do, could take them and dispose of them to his own use, they being personal goods, between landlord and tenant. It has however been suggested, to divide the rule and make it operate on persons agreeably to their situations. That between the creditor of a tenant and the tenant himself, every thing should be considered personal goods, which would be considered personal goods between the tenant and his landlord; but between the creditor of the owner of real estate, and the owner himself, the rule between heir

and executor should be applied. This would be unequal in its operation; one class of men would be subject to one rule of conduct and another class subject to another rule. The machinery, &c. of the manufacturer, tradesman, or mechanic, could be seized and sold as personal goods, if he were a tenant, but if he owned the soil it could not.

Upon the most mature and deliberate examination which we have been able to give the subject, and upon a full consideration of all the leading cases to be found in the books, materially relative to the subject, we are of opinion that the same rule should be applied between debtor and creditor, that is applied between landlord and tenant. We think that rule more likely to give satisfaction, and answer the ends of justice, generally, than either of the others.

In the case of *Cresson* v. *Stout*, 17 Johns. Rep. 116, the Court held that machinery for spinning flax and tow, and carding machines, used in a manufactory, which were attached to the building by an upright board resting on the frames and fastened at the ceiling, and by cleats nailed to the floor round the feet of the frames, &c. were personal property and subject to an execution of *fi. fa.* as personal property. In *Poole's Case*, Salk. 368, it was held by the Court, that the vats, tables, partitions, &c. of a soap-boiler were personal goods, and liable to an execution of *fi. fa.* as personal goods.

In the case now before us, we think the carding machine in question was personal goods, and liable to be seized and sold by an execution of *fi. fa.*, issued by a justice of the peace, and that the instructions of the Court to the jury were incorrect (1).

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*C. Dewey* and *I. Howk*, for the appellant.
*J. H. Thompson* and *I. Naylor*, for the appellee.

Nov. Term, 1832.

TAFFE
v.
WARNICK.

(1) The *fixtures* put up by a tenant, which he has a right, as between himself and his landlord, to remove before his term expires, are considered the tenant's property, and are liable in *England* to a *fieri facias* against him, which, like the execution referred to in the text, only reaches goods and chattels. 2 Stark. Ev. 5th Amer. ed. 909. But if such execution be against a freeholder who himself put up the fixtures, and they are such as would go to his heir, they cannot be taken under it, as appears by the following case:

"Trespass for breaking and entering plaintiff's house, and taking his fixtures, goods, and chattels. Justification under a writ of *fi. fa.* directed to the defendant, *Ingilby*, as sheriff of the county, under which the defendant, *Hauxwell*, his bailiff,

Nov. Term,
1832.
_____
MURDOCK
v.
HOLLAND.

peaceably entered the premises, and seized, &c. Replication *de injuria*, &c. At the trial at the last assizes for *Yorkshire*, before *Cross*, Serjt. the only question was, whether the defendants were justified in seizing, under the execution, some fixtures, consisting of set pots, ovens, and ranges. It appeared that the house where these were fixed was built on the plaintiff's own freehold, and the learned sergeant was of opinion, that under these circumstances they were not seizable by the sheriff under an execution. The plaintiff accordingly had a verdict. And now,

*Littledale* moved to enter a verdict for the defendants, and referred to *Poole's Case*, 1 Salk, 368,—*Elwes* v. *Maw*, 3 East, 38, and *Ex parte Quincy*, 1 Atk. 477.

*Per Curiam.*—The verdict is right, for these were fixtures which would go to the heir, and not to the executor, and they were not liable to be taken as goods and chattels under an execution. Here, the house where they were fixed was the freehold of the plaintiff, which distinguishes this case from those cited. Rule refused." *Winn* v. *Ingilby* and *Hauxwell*, 5 Barn. & Ald. 625.

"*Fixtures*, if annexed to the freehold for the purposes of *agriculture*, or otherwise than for trade, or where there is a covenant to leave all improvements, belong to the landlord. But when put up for the purposes of *trade*, or when what are usually termed *tenant's* fixtures, such as grates, stoves, &c. they are in general removable by the tenant; and even trees in a garden, when used for the purposes of *trade*, as in nursery grounds, are removable by the tenant; but then he must remove them during his tenancy, or they become the property of the landlord; or, at least, a tenant strictly at will must remove within a more reasonable time; and if a tenant have covenanted to leave all *improvements*, he cannot then legally remove any fixtures that would rank under such general terms; and in case of the sale of a freehold estate, if the vendor do not remove fixtures before he executes the conveyance, they pass to the purchaser. When removable by the tenant, the fixtures put up may be taken and sold under an execution against him. But fixtures put up by a freeholder could not be so taken." 1 Chitt. Gen. Pr. 94.