SPARKS and Others *v.* THE STATE BANK.

SPARKS
*v.*
THE STATE
BANK.

A note and mortgage appearing on their face to be executed to the state bank in its corporate name, will be presumed to have been taken in conformity with the charter of the bank, until the contrary be shown.

The bank, by the 6th section of the charter, may hold real estate which shall have been mortgaged to it by way of security for money due to it on a promissory note, executed on the same day with the mortgage.

A steam-engine erected in a permanent manner in a tan-yard to facilitate the process of tanning, and used there for such purpose for two or three years, but which could be removed without injury to the building with which it was connected by braces,—was held to be a fixture, and to pass, by a mortgage of the land on which it was erected, to the mortgagee.

A subsequent mortgage of real estate, though first recorded, will not prevail against a prior one which is not recorded in time, if the subsequent mortgagee had actual notice of the prior mortgage.

If a judgment be obtained against a person subsequently to his execution of a mortgage, but before the mortgage is recorded, the mortgage though it was not recorded in time will have the preference. But, perhaps, a *bona fide* purchaser at sheriff's sale under the judgment might be protected by the statute.

7b 469
133 471
7b 460
160 694

ERROR to the *Dearborn* Circuit Court.

*Friday,
July 25*

BLACKFORD, J.—This was a bill in chancery filed by the State Bank of Indiana against *William S. Durbin, Eliza Durbin, Willis Peak, George Roberts, The Lawrenceburgh Insurance Company, Jacob Hayes, Enoch D. John, Green Sparks,* and *Norval Sparks.*

The bill states that on the 24th of *January,* 1840, *Durbin* became indebted to the complainant, by a promissory note of that date, in the sum of 6,000 dollars; and that on the same day, *Durbin* and his wife, to secure the payment of the debt, executed a mortgage to the complainant, and "thereby granted, bargained, sold, and conveyed to the complainant and assigns the following described real estate, to wit, that tract or parcel of ground lying in the county of *Dearborn* and state of *Indiana,* and bounded as follows, to wit, beginning," &c. (The boundaries of the land are here set out.) "To have and to hold the premises hereby bargained and sold or meant or intended so to be, with the appurtenances," to the complainant and its assigns forever. And the debt is averred to be unpaid. The bill further states, that in *April,* 1840, *Durbin* executed a mortgage of a portion of

May Term,
1845.

SPARKS
v.
THE STATE
BANK.

the appurtenances situate on the land before mortgaged to the complainant, viz., of an engine of the value of 1,000 dollars, to said defendants *Norval* and *Green Sparks*, and *Enoch D. John*, and to two other persons who are not made defendants; these mortgagees having full knowledge of the complainant's mortgage. The bill further states that in *April*, 1840, *Hayes* recovered a judgment against *Durbin* for 936 dollars; that in *April*, 1841, *Peak* and *Roberts* recovered a judgment against *Durbin* and others for 2,517 dollars and 90 cents; and that in ——, *The Lawrenceburgh Insurance Company* recovered a judgment against *Durbin* for the sum of ——. Prayer that the equity of redemption in the premises mortgaged to the complainant be foreclosed, and that the premises be sold, &c.

The bill was taken as confessed against *Durbin* and wife, and *The Lawrenceburgh Insurance Company*. The other defendants filed their answers.

In consequence of the blanks in the bill relative to the judgment in favour of *The Lawrenceburgh Insurance Company*, the case stands as if that company were not a party to the suit. *Durbin* having been declared a bankrupt pending the suit, his assignee was made a defendant. The execution of the promissory note and of the mortgages aforesaid, and the rendition of the said judgments, are not disputed. The mortgage to the complainant was not recorded until the 14th of *October*, 1841. The mortgage to the *Sparkses*, *John*, and others, was recorded on the 21st of *May*, 1840. The *Sparkses* and *John* admit that, previously to the execution of the mortgage to them, they had notice of the mortgage to the complainant.

The facts relative to the engine described in the mortgage to the *Sparkses*, *John*, and others, are substantially as follows: There were on the premises mortgaged to the complainant, at the date of the mortgage, and had been for several years previously, a tan-yard, bark-mill, &c. Two or three years before the date of that mortgage, *Durbin*, the owner of the property, and who had previously ground the bark there by horse power, erected on the premises a steam-engine (the engine described in the second mortgage,) to aid in grinding bark, and to facilitate the process of tanning.

The engine and boiler, used for said purposes since their erection, are placed on a stone foundation, and there is a large brick chimney at one end of the boiler. The engine is put up like other similar engines in a permanent manner; but it might be removed without injury to the building with which it is connected by braces.

The Circuit Court decreed that the equity of redemption in the premises mortgaged to the complainant be foreclosed, and the premises including the engine, &c., be sold, &c.

The first objection made to the decree is, that the note and mortgage to the complainant are void, it not appearing that they were received by the bank through the agency of one of its branches. This objection is not tenable. The note and mortgage appear on their face to be executed to the bank in its corporate name; and if they were not taken in the mode prescribed by the charter, the defendants must show that fact.

It is contended that the bank had no authority to receive this mortgage. The sixth section of the charter gives the bank a right to hold real estate, which shall have been mortgaged to it by way of security for money due. The proviso in this mortgage is, "that if the party of the first part, his heirs, &c., shall well and truly pay to the party of the second part or its assigns, the sum of 6,000 dollars, according to the tenor and effect of a certain note this day made by said *Durbin*," &c. The real estate in question, therefore, appears to have been mortgaged to the complainant, to secure the payment of money due to it; and the mortgage is authorized by the charter.

The defendants who claim under the second mortgage contend, that the engine mortgaged to them is personal property, and did not therefore pass to the complainant by the first mortgage; but we are of a different opinion. The engine is a fixture and a part of the freehold. The rule on the subject as between heir and executor, vendor and vendee, and mortgagor and mortgagee, is the same. In all such cases, fixtures like the engine in question pass with the land, though erected for the purposes of trade. *Miller* v. *Plumb*, 6 Cowen, 665.— *Colegrave* v. *Dias Santos*, 2 Barn. & Cress. 76.— *Goddard* v. *Chase*, 7 Mass. 432.— *The Pres., Direct.*,

*May Term, 1845.*

SPARKS
v.
THE STATE
BANK.

May Term,
1845.

*and Co. of the U. Bank* v. *Emerson*, 15 Mass. 159.—*Noble* v. *Bosworth*, 19 Pick. 314.—*Taffe* v. *Warnick*, 3 Blackf. 111. These defendants claiming under the second mortgage contend further that, admitting the engine to be part of the freehold, still as their mortgage was first recorded, and that to the complainant not recorded in time, they have the prior claim. But that ground is not tenable, as they had notice of the first mortgage before the execution of the mortgage to them. *Ricks* v. *Doe*, 2 Blackf. 346.

The claim of the other defendants, who have judgments against *Durbin* obtained subsequently to the mortgage to the complainant, but before it was recorded, must yield to that mortgage, though it was not recorded in time. A mortgage of real estate, though not recorded in season, is a valid conveyance, except so far as its validity may be affected by statute; and the statute on the subject renders such conveyances, not recorded in time, void only as to subsequent purchasers and mortgagees for value, whose deeds are first recorded. It has no relation to judgment-creditors. Perhaps a *bona fide* purchaser at sheriff's sale under such judgment might be protected by the statute, but that is a different case. 4 Kent's Comm. 173.

*Per Curiam.*—The decree is affirmed with costs.

*A. Lane*, for the plaintiffs.

*D. Macy*, for the defendant.