## HENSLEY VS. BRODIE.

W. sold to B. certain machinery attached to a mill, and delivered possession; subsequently, he entered into a written contract, under seal, for the sale of the lot and mill-house: HELD, that he was a competent witness, in a suit between B. and one claiming under the contract of sale, to prove the previous sale of the machinery, and that, at the time of the sale of the lot, there was a special reservation, by parol, of the machinery; though he might be estopped in a suit between himself and others, growing out of the contract of sale, from proving a parol reservation of any thing attached to the freehold.

The sale of an engine and apparatus, fitted up in a mill-house for the purpose of driving a mill, accompanied by delivery of possession and exercise of ownership by the vendee, clearly amounts to such a severance of them from the realty as to make them personal property and entitle the vendee to bring replevin for them.

*Error to the Circuit Court of Pulaski County.*

Hon. WILLIAM H. FEILD, Circuit Judge.

A. FOWLER, for the plaintiff.

S. H. HEMPSTEAD, for the defendant.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 22d of February, 1850, George Brodie brought an action of replevin in Pulaski Circuit Court, against Larkin Hensley for the following property: "One steam boiler and stand pipe, one governor to a steam engine, and appendages thereto attached, one large band wheel and shaft, one large force pump with its appendages, and all the copper pipe thereto attached, which belonged to the engine, as erected by one Darwin Lindsey, one lift-

ing cold water pump, with all the copper pipe thereto attached, one large flour bolting chest, steam-engine timbers, bolts, boiler door, and detached copper pipe, and two wrenches."

The declaration was in the *detinet*, describing the property as above, alleging a bailment thereof by the plaintiff to the defendant, and a refusal to re-deliver on demand.

The defendant pleaded *non detinet*, and property in himself, to which pleas, issues were made up, the cause submitted to a jury at December term, 1851, and verdict and judgment for the plaintiff. The defendant excepted to the opinion of the court, in giving and refusing instructions to the jury, took a bill of exceptions, setting out the evidence and brought error.

It appears from the bill of exceptions, that upon the trial the plaintiff proved, by William E. Woodruff, that some four or five years before then, he being the owner and in possession thereof, sold to the plaintiff the boiler, pumps, and machinery connected with the steam engine mentioned in the declaration, which were then in a steam saw, and grist mill belonging to the witness, and which had been previously erected and worked by Darwin Lindsey, on the north-half of fractional block No. 108, in the City of Little Rock, and which fractional block witness had purchased of Lindsey, and was, at the time of the trial, the owner, and in possession thereof. Witness sold the engine, apparatus and pumps to the plaintiff for $500, received the consideration, and delivered them to him. Thinks he did not give a bill of sale, but plaintiff had the right to take the property, and did afterwards remove some of the articles of the engine away, and at all events it belonged to the plaintiff, who exercised ownership and control over it after the sale. Witness did not sell the bolting chest to plaintiff—knew nothing about it; there was none there when he sold the engine to the plaintiff. The machinery so sold to the plaintiff, was then in the mill, and witness delivered it to the plaintiff, as above stated, who still let a portion of it remain in the mill ; and had not taken away such portion when witness, afterwards, conditionally, sold the lot or block, on which the mill

was situated, to *Hoyt and Johnson*. Witness contracted to sell them the lot, and executed to them a title bond therefor on the 1st of October, 1848, and delivered the possession to them, (the boiler and other machinery of the engine mentioned in the declaration, being then still in the mill.)

The title bond referred to, was shown to the witness, identified by him, and is copied in the bill of exceptions as part of the evidence.

After this title bond had been so proven, the court permitted the witness to testify, against the objection of the defendant, that at the time he sold said lot or block, with the mill on it, to Hoyt and Johnson, and executed to them said title bond, he specially reserved, by parol, the engine, boiler, machinery, &c., in controversy, as the plaintiff's property, and that Hoyt and Johnson so distinctly understood it.

The defendant excepted to the opinion of the court, so permitting the witness to testify as to such parol reservation, when the contract was reduced to writing under seal.

Woodruff further testified, that Hoyt and Johnson, under said contract with him, used the saw and grist mill and the boiler, engine, and machinery, in controversy, that defendant acquired possession of the same under Hoyt and Johnson, and also used the mill and boiler, engine, and machinery in the mill, and was in the use and possession of them when this suit was brought. That Hoyt and Johnson never paid witness any part of the purchase money, agreed to be paid to him ; and, under the contract, forfeited all right. That after they had run away from Little Rock, the defendant told witness that he had not paid them anything on account of his purchase of the lot and mill from them ; but witness afterwards understood, from some source not remembered, that defendant got the notes, which he had given to them from A. E. Thornton.

Bennett testified, on the part of the plaintiff, that the defendant was in possession of the mill, at the time the articles in controversy were replevied by the sheriff; they were in the mill-

house, and defendant in the use of them. The boiler had been rolled out and repaired, and some of the articles of the machinery had been taken down, and others had not, but were in their proper places. The defendant was running the mill, and it could not have been run without the machinery mentioned in the declaration, or similar articles; the bolting chest was also fixed up in the mill. Defendant had refused to deliver the property in controversy to the plaintiff, on demand, before suit. Witness was present when the sheriff executed the writ, &c. The articles mentioned in the declaration, and sued for by the plaintiff, constituted only a part of the steam engine originally in the Lindsey mill; the plaintiff having taken part of it away, after he purchased the engine from Woodruff. Witness helped plaintiff to take it down. That when Hoyt and Johnson had the mill, the witness put in for them a part of a steam engine owned by him, which in connection with the part left by the plaintiff, and sued for by him, enabled Hoyt and Johnson to use the mill; and that both parts were there, and came into the possession of the defendant when he took possession of the property. Hensley, the defendant, lived with his family in a dwelling house on said lot or block, after Hoyt and Johnson left the premises.

The witness, on being asked by the plaintiff what he had heard the defendant say respecting the boiler and apparatus sued for, replied, in substance, that after the contract between Hoyt and Johnson and the defendant, and before this suit, he, the witness, heard defendant say that he would do what was right about it, or words to that effect, but did not mention the plaintiff, or any other person's name.

Plaintiff proved by *Robert Brodie*, that about three years previous to the time of the trial, and before suit, he heard the defendant say to the plaintiff at the penitentiary: "I understood the boiler and machinery in the mill is yours. I am poor, and not able to buy it, and I will pay you the same rent for them that Hoyt and Johnson were to pay you," or words to that purport and substance. Plaintiff at the time had charge of the penitentiary.

Mercer testified for the plaintiff, that he first saw the bolting chest in controversy, at the plaintiff's residence, and helped to haul it from thence to the penitentiary, and then to the steam mill above referred to. That about three years ago (before the trial) Hoyt and Johnson took possession of the steam mill, and witness helped to take the boiler, &c., to the penitentiary to be repaired, and they were then returned to the mill, and the plaintiff had the bolting chest taken to the mill, whilst Hoyt and Johnson were in possession of it.

The defendant then was permitted to prove the execution of, and read to the jury, against the objection of the plaintiff, the agreement between Woodruff and Hoyt and Johnson, for the sale of the lot or fractional block, upon which the mill was situated, the agreement of sale from Hoyt and Johnson to the defendant, and his four obligations to them for the purchase money with the endorsements thereon.

The agreement between Woodruff and Hoyt and Johnson, bears date 1st October, 1848. It witnesseth, that in consideration of $1, &c., and in further consideration of five obligations executed by them to him, whereby they agree to pay to him $212 on the 1st October, 1849, $224 on the 1st October, 1850, $236 on the 1st October, 1851, $248 on the 1st October, 1852, and $260 on the 1st October, 1853, with interest, &c., he covenants, on full payment of said obligations, &c., to make to them, their heirs, &c., a deed with usual covenants of warranty, to the fractional block before mentioned, "being the same fractional block on which the steam mill and dwelling house formerly belonging to Darwin Lindsey, are now situate, &c., together with all the rights and privileges thereto belonging." Hoyt and Johnson covenanted on their part to pay the obligations, as they severally fell due, with taxes, &c.; and it was further expressly agreed by the parties that if said obligations, &c., or either of them should not be fully paid within ten days after maturity, Woodruff was not to be bound to convey said fractional block or any part thereof to Hoyt and Johnson, and thereupon all payments previously made by them,

were to become absolutely forfeited to Woodruff, and from thence, and forever thereafter, the said block of land was to be absolutely re-invested in him, and by him again re-entered upon and repossessed as fully and effectually as if this agreement had never been entered into, and the same was to remain forever null and void as against Woodruff, who was thereupon to be fully authorized to sel., or otherwise dispose of the same, in any form or manner that to him might seem right and proper.

The agreement was signed an sealed by the parties, acknowledged by them on 13th, and filed for record on the 15th December, 1848, in the Recorder's Office of Pulaski county, and duly recorded, as appears from the appended certificates.

The agreement between Hoyt and Johnson and defendant, bears date 18th December, 1848, and is, substantially, in the same from as that between Woodruff and Hoyt and Johnson, except that it provides for the payment of the obligations given for the purchase money in the grinding of grain to e furnished at the mill by Hoyt and Johnson, at a stipulated price per bushel. It refers to the agreement with Woodruff in describing the premises.

Hensley's obligations were for $930, $885, $840, and $795, payable at one, two, three, and four years from date. They are endorsed by Hoyt and Johnson to A. E. Thornton, 12th January, 1849, and by him endorsed to H nsley, without recourse, on the 19th of February, 1849.

Defendant proved by Fowler, that some time after Hoyt and Johnson had run away, he was called in to the State Bank, then occupied by Thornton, who then had in his possession the four obligati ns above referred to, and who stated that he had acquired them from Hoyt and Johnson, and acknowl ged that Hensley had satisfactorily arranged with him, Thornton, and in the presence of witnesses, signed the transfer to Hensley, endorsed on each of said obligations, and then delivered them to Hensley. Witness did not know how Hensley had settled them with Thornton, further than that they both then said that Hensley transfer-

red some lands to Thornton, by a deed of mortgage, or deed of some kind, in the adjustment of said obligations.

Plaintiff then proved by parol evidence, and by the records of the court, that on the 25th March, 1850, Woodruff brought an action of unlawful detainer against Hensley, in Pulaski Circuit Court, for the same fractional block, conditionally sold by Woodruff to Hoyt and Johnson, and by them to Hensley, upon which the mill was situated, and recovered final judgment therein against Hensley, on the 3d day of January, 1851, and under which proceeding Woodruff obtained, and continued to retain possession of the premises.

Defendant, conceding these facts to be proven, objected to the competency and relevancy of this testimony, and excepted to the opinion of the court refusing to exclude it.

At the instance of the plaintiff, the court instructed the jury as follows: "That if the jury believe, from the evidence, that the engine and machinery, and articles sued for, were the property of the plaintiff, and had not been sold or disposed of by the plaintiff, he has the right to recover in this action."

The defendant moved the following instructions: 1st. That even if the jury believe, from the evidence, that plaintiff in fact owned the machinery and property in controversy, yet, if he permitted the said Hoyt and Johnson to hold the same in their possession, and use it in their mill as their own, as a part of the machinery thereof, and that the defendant purchased the same with the mill without notice of the plaintiff's claim, he is entitled to hold it against the plaintiff, as a bona fide purchaser from said Johnson and Hoyt.

2d. If the jury believe, from the evidence, that the articles of property in controversy were fixtures, attached to the steam mill, in possession of said Hensley, at the time of the institution of this suit, the plaintiff is not entitled to recover them in this form of action.

3d. That in order to constitute an article of property, a fixture in land, it is not always necessary that it be fastened per-

manently to the ground, or to the building where it is used; but where a mill stands upon land, it constitutes in law a part of the land, and any machinery annexed to it, where it is necessary to its use, is a fixture, and becomes thereby also a part of the freehold.

4*th.* That if the jury believe, from the evidence, that the articles of property mentioned in the declaration, and replevied under the said writ, were fixtures, and a part of the machinery of said mill, then although, at the time of their said seizure by the sheriff, under the said writ, they may have been temporarily detached from the mill, for repairs, or other purposes, yet they did not thereby lose their character and quality of fixtures.

5*th.* That the action of replevin only lies for personal property, and cannot be maintained for real estate, or for that which partakes of the realty, by being so attached thereto as to constitute it a fixture.

6*th.* That in law, a fixture is an article of property, originally personal, but so fixed to the freehold or realty, that it cannot be severed therefrom without damage to the realty, and thus become a part of the realty." Which instructions the court declined to give.

"Whereupon," the bill of exceptions states, "the court declared to the counsel, engaged in the cause, in the presence of the jury, before they retired, that the said deeds read in evidence, show no title in the defendant to the property therein mentioned, on which he can only rely as a defence to this action, and before he could so rely upon them, he would have to prove the performance of the condition mentioned in said deeds, and that they were not forfeited."

"And, thereupon, instructed the jury that all of the instructions, moved for by the said defendant, touching the question or subject of fixtures, are abstract, and have nothing at all to do with the case on trial; and that the doctrine or question of fixtures, does not arise in the case at all."

The defendant excepted to the opinion of the court, giving and refusing instructions as above.

1. It is insisted, on the part of the plaintiff in error, Hensley, that the conditional conveyance by Woodruff to Hoyt and Johnson, of the lot of ground on which the mill house was situated, being a contract reduced to writing, and under seal, the court erred in permitting Woodruff to prove a parol reservation of the machinery in controversy, which it is submitted, passed by the deed, from the vendor to the vendees, with the premises, as fixtures.

Assuming that the machinery constituted fixtures, and remained the property of Woodruff, at the time of the contract of sale with Hoyt and Johnson, this would doubtless be the law as between the vendor and vendees, the parties to the contract. But is this rule applicable to the case at bar?

Mr. GREENLEAF says: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and all oral testimony of a previous *colloquium* between the parties, or of conversations or declarations, at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 *Greenf. Ev., sec.* 275.

But again he says: "The rule under consideration is *applied only in suits between the parties to the instrument,* as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained. It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others." *Ib., sec.* 279.

*Brodie* was in no way a party, or privy to the deed in ques-

tion.   It seems from the evidence, that he purchased the machinery, paid for it, received it into his possession, and under his control, and removed a portion of it from the mill house, before the deed was executed ; and in no way holding under the deed or a party to it, he could not be estopped by its recitals.   A portion of Woodruff's testimony related to the sale of the machinery to Brodie, which was a separate and distinct contract from that entered into by the witness with Hoyt and Johnson.   Another portion of his testimony related to the latter contract, in which he stated that he distinctly informed them, at the time of the sale of the premises, that the machinery in controversy (except the bolting chest) had been previously sold by him to Brodie, and that they purchased with a full understanding of that fact. Though in a suit between Woodruff and Hoyt and Johnson, growing out of this contract, the former might be estopped by the deed from proving a parol reservation of anything attached to the premises, and which by law, without a reservation in the deed, would pass with the land; yet, surely Woodruff could not, by failing to insert such reservation, divest Brodie of property, which he had previously sold to him, and especially where the purchaser is notified of the previous sale.

In *Gibbons vs. Dillingham,* 5 *Eng. R.* 9, this court held that an absolute deed in fee of the soil passed the growing crop, and that a reservation of the crop could not be established by parol, but in that case it was proven by parol testimony, that before the vendor conveyed the land, he had leased it to another, and that the growing crop belonged to the tenant ; and the court held that the crop of the tenant did not pass to the vendee by the deed, but merely the right of the vendor to the rent.   If the tenant had paid the rent in advance, it can hardly admit of doubt, but that notwithstanding the conveyance of the soil by his landlord without reservation, the tenant would have been entitled to the crop, free of the payment of any rent to the vendee.   The conveyance of the landlord could neither cut off the tenant's vested right in the crop, nor subject him to a second payment of the rent, nor could he

possibly be estopped by the deed of his landlord to the vendee, from proving the lease and payment of the rent. The case now at bar is analogous in principle.

So, as between the parties to the deed, where certain premises were leased, including a yard, described by metes and bounds, and the question was whether a cellar, under the yard, was or was not included in the lease ; verbal evidence was held admissible to show that at the time of the lease, the cellar was in the occupancy of another tenant, and therefore that it could not have been intended by the parties that it should pass by the lease. So, where a house, or a mill, or a factory is conveyed, *eo nomine*, and the question is as to what was part and parcel thereof, and so passed by the deed ; parol evidence to this point is admitted. 1 *Greenl. Ev.*, 4 *Pick.* 239 ; 6 *Greenl. Rep.* 354.

The court below, therefore, did not err in permitting Woodruff to prove the previous sale of the machinery to Brodie, and the reservation of it in the subsequent sale of the premises to Hoyt and Johnson.

2. The instruction given to the jury on the part of Brodie, the 2d, 3d, 4th, 5th, and 6th, proposed for Hensley, and refused, and the remark of the court to the jury, that they were abstract, and that the question of fixtures did not arise in the case, present the important inquiry, whether upon all the facts of the case, Brodie, though the owner of the machinery, could maintain replevin for it, notwithstanding it was so fitted up in the mill-house as to answer the purpose of running the mill.

The position assumed for Hensley is, that the machinery was so affixed to the premises as to constitute it a part of the realty, and that it could not be recovered by a personal action.

If Brodie could not recover the property by the action of replevin, upon the facts of the case, he could not recover it in any form of action. It is not shown that he had any claim to the possession of the premises, upon which the mill house was situated, and therefore could not bring ejectment, and recover the machinery as an incident. Ejectment for a *steam engine, boiler, bolting*

34B

*chest, &c.,* belonging to the plaintiff, but fitted up on the premises of another, would be a novelty unknown to the law books. Detinue lies for personal property in specie only, and trover for its conversion. If replevin will not lie upon the facts of this case, Brodie is in the singular predicament of having a legal right to property, without a legal remedy to recover it.

His position may be illustrated by a case that might not unfrequently occur in this age of invention, and the use of machinery for propelling purposes in thousands of various forms.

Suppose A to be the owner of a lot with a mill or manufacturing house erected upon it. He rents from B a steam engine and apparatus for an agreed term, with the understanding that it is to be fitted up in the house for propelling purposes, and so used during the term, and then to be restored to the owner. It is accordingly fitted up, employed, and at the end of the term, A refuses to surrender the machinery to B on demand. If by being fitted up upon the premises of A and affixed to his mill or manufacturing house, it becomes, under such circumstances, a fixture in law, and part of the realty, how is B to recover his property in specie? Must he lose it, or resort to an action for damages upon a breach of the contract, and take the chances of the solvency of the defendant? Or is the property, though in some sense a fixture in fact, not a fixture in law, under the circumstances, and may it not be recovered as personalty by replevin or detinue?

The proof in this case conduces to show that Hoyt and Johnson rented the machinery of Brodie, and that Hensley, shortly after he purchased the premises, stated to Brodie that he understood that the machinery belonged to him, and offered to pay rent for it, and afterwards refused to surrender it upon demand.

We are not prepared to say, upon examination of authorities, that if this were a case arising between a vendor and purchaser of the premises, or an heir and executor, the machinery being fitted up for the purpose of running a mill upon the premises, it would not have belonged to and followed the soil. But it is clear

that if the case arose between landlord and tenant—if Brodie for instance had leased the lot and mill house from Woodruff, and being the owner of the machinery, had fitted it up in the house for purposes of trade, he would have had the right to remove it as personalty at the end of the term, and a conveyance by Woodruff of the premises during the lease, would not have vested a right to the machinery in the vendee. See *Elwes vs. Maw*, 3 *East R.* 38 ; 2 *Kent Com.* 342 to 348 ; *Holmes vs. Tremper*, 20 *Johns. R.* 29 ; *Walker vs. Sherman*, 20 *Wend. R.* 636 ; *Farrar vs. Stackpole*, 6 *Greenl. R.* 154 ; *Vann Ness vs. Pacard*, 2 *Peters* 137.

The case at bar is not one arising between a landlord and tenant of the premises, but it is upon principle more analogous to that class of cases, than to the other classes of cases, in which the law in relation to fixtures is more rigid.

*Folsom vs. Moore*, 19 *Maine R.* 252, was trespass for entering the plaintiff's close, and carrying away a stove affixed to his dwelling. The plaintiff had conveyed the premises to Small, and afterwards recovered possession of them again under a mortgage aken for the purchase money. When he sold the premises to Small, he represented the stove as constituting part of the improvements, but afterwards sold it to Randall as personal property. Randall sold it to Small, and Small to the defendant, who entered the premises and took away the stove after the plaintiff had come back into possession under the mortgage; the stove having remained all the while unmoved in the dwelling. It was argued for the plaintiff, that the stove was a fixture, and its character could not be changed by selling it as personal property. WESTON, Chief Justice, delivering the opinion of the Court, said : "The better opinion is, upon the authorities, that the stove in question being fitted, adapted and designed for the use of the house, would pass by a conveyance of it, as part of the real estate. But it was doubtless competent for the owner to sell it as personal, and if the purchaser or any under him thereupon takes it away, the former owner has no just cause of complaint. * * * * A fence is part of the realty,

but it may be sold or reserved as personal property. *Ropps vs. Barker*, 4 *Pick.* 230." The opinion proceeds to decide that the plaintiff by selling the stove severed it from the realty, though it was not in fact removed, and that it would be against every principle of justice to permit him, after having sold it as personal, to turn round and reclaim it as part of his real estate; and that the defendant had the right to enter the premises and remove the stove as his personal property, and was therefore no trespasser.

If the effect of the sale of the stove was to sever it from the realty, in contemplation of law, so as to make it personal property, and entitle the purchaser to enter the premises peaceably and remove it, as held in this case, can it be doubted upon principle, that he could have recovered it by detinue or replevin? Where a man buys goods, and pays for them, and the seller refuses to deliver them, the purchaser may recover them by detinue, because by the sale and payment, the property is in the buyer. 1 *Arch. N. P.* 287; *Bul. N. P.* 50.

In *Holmes vs. Tremper*, 20 *John. R.* 29, the defendant erected a cider mill and press, at her own cost during her tenancy, for the purpose of making cider on the farm which she had leased. After the expiration of her term, she removed the mill and press, and the plaintiff deriving title to the premises from the landlord, brought replevin for them, contending that the mill and press were such fixtures, as the tenant could not remove; but SPENCER, Chief Justice, said: "It is immaterial whether the mill was let into the ground or not. The tenant, in my judgment, had an unquestionable right to remove it as personal property."

*Heaton vs. Findlay*, 2 *Penn. R.* 304, in its principal features, is much like the case at bar. Q. & M. were the owners and occupiers of a furnace, blown by a cast iron cylinder, which was affixed to the furnace, and absolutely necessary to its use. They sold the cylinder to Findlay, who perhaps temporarily detached it, but it was afterwards put back into its place and used as before. At the time Findlay purchased the cylinder, there was a judgment against Q. & M., which was a lien upon the premises to

which the cylinder was attached, and afterwards Heaton pur-chased the premises under an execution issued upon the judgment, and Findlay brought replevin against him for the cylinder. BELL, Justice, delivering the opinion of the Court, said: "Under these circumstances can the plaintiff recover? It is objected that the right of property in a chattel, which has become so by sever-ance from the freehold, cannot be determined in replevin, or other transitory action. But this obtains only where ownership of the thing severed is deduced from an averment of title to the freehold, and to be established by a trial of that title. The pre-sent case, putting it on the ground presented by the plaintiff, is not therefore within the principle of *Mather vs. The Trinity Church*, 3 *S. & R.* 509, and *Powell vs. Smith*, 2 *Watts* 126, but is cov-ered by that ascertained by *Cresson vs. Stout*, 17 *John. R.* 116, where it was ruled that machinery, severed by the owner of the realty, became personal property and a proper subject of reple-vin. This technical difficulty is thus put aside, and we are brought unimbarrassed by it, to the leading question in the case, is the plaintiff the owner of the cylinder?"

The court proceeded to decide that Findlay was not the owner of the cylinder, because, at the time he purchased it of Q. & M., the judgment constituted a lien upon the premises, to which the cylinder was attached as a fixture, and that the sale by them to Findlay did not divest the lien, but that the purchaser under the execution obtained the title to the cylinder as part of the pre-mises.

It can hardly be doubted but that the machinery in controversy, including the bolting chest, under the facts proven in the case, would have been subject to execution and sale as the personal property of Brodie. See *Taffe vs. Warwick*, 3 *Blackf.* 111.

Though, as above intimated, perhaps the engine and appara-tus, fitted up for the purpose of driving the mill, might have pas-sed, on a sale of the premises by Woodruff, without reservation, to his vendee as fixtures, (*Sparks vs. State Bank*, 7 *Blackf.* 469), yet the sale of them by Woodruff to Brodie, the delivery of posses-

sion and control to him, and the subsequent exercise of ownership over them by him, established by the evidence, amounted clearly to such a severance of them, in law, from the realty, as to make them his personal property, and entitle him to bring replevin for them, against the defendant, who had recognized his title to them and offered to pay him rent for them, but afterwards refused to surrender them upon demand.

This view of the case determines all the questions arising upon the record. The proof does not show that Hensley was an innocent purchaser, without notice, and if it did, the property being personalty, the rule *caveat emptor* applies.

The admission by the court of proof of the recovery of the premises by Woodruff in the action against Hensley, whether erroneous or not, is immaterial, as Brodie was entitled to recover independent of Woodruff's claim to the possession of the lot, and Hensley cannot be regarded as having been prejudiced by the admission of such evidence.

Upon the whole record the judgment of the court below is right, and must be affirmed.