White, J.
The exceptions in this case are to the findings of the court upon the question, as to whether the property, in controversy, was realty or personalty. The evidence is set out m the record, and is conflicting. It has been passed upon once by the superior court in special term and subsequently by the same court in general term. Whether the articles in controversy were real or personal property is a mixed question of law and fact. So far as the evidence is in conflict, this court does not occupy the position of the court below; but should assume the truth to be with the testimony which sustains, and not with that which impugns the findings of the court. To the extent, therefore, that the finding of the court is sustained by evidence in the case, this court, in reviewing the findings of fact, is not at liberty, on error, to assume that credit was due where the court below did not award it. This is not the case, provided by statute, of the overruling of a motion for a new trial, where the court on error are required to review the weight of the evidence; nor the case of special findings of fact by the court. The case stands upon the exception to the finding of the court as contrary to the law. The law of the case depends upon the facts existing in the case, and as nothing but the evidence is disclosed, we must assume all the facts to have been found by the court which the evidence in favor of the finding would have authorized to have been found, without reference to the counter evidence; for non constat, the latter, though introduced, may not, in the opinion of the court, have been entitled to credit. And, if not, there was no error of ■law in disregarding it; for the court could not have done other • wise.
*563 The controversy, as to the character of the property in question, arises between Eortman, claiming under his real estate mortgage of December 2,1858, and the creditors of Hipp & Brandt, claiming the same property under chattel mortgages subsequently executed to them, by Hipp & Brandt.
The portion of the property in dispute, which Hipp & Brandt claim to have purchased as personal property, as evidenced by the bill of sale, is not specially named therein; but the general terms of the bill of sale are sufficiently comprehensive to include it. What specific articles composed the bulk which is ■described, in the bill of sale, in general terms as sold and transferred, for the consideration of $9000 00, may be ascertained by extrinsic evidence. This evidence, without conflict, shows that the articles in dispute, with the exception of •such as were subsequently added by Hipp & Brandt, were included in and formed part of that described in the bill of sale. Brandt, after testifying that the real estate was purchased for ■the sum of $16,000 00, states such to have been the fact, that'they paid $9000 00 therefor, and that the same was included in the bill of sale. Eortman, in his testimony, does not deny that the division was made, and the property included in the bill of sale, as stated by Brandt, but states that the whole ■was sold at $25,000 00; that “when the papers came to be made out, Hipp & Brandt, divided the property, fixing the real ■estate at $16,000 00, and the fixtures and personal property at $9000 00; that this was a valuation of their own to which ñe did not object — believing it would make no difference.” Independent of the difficulty of this court, upon the grounds .already stated, giving effect to the testimony of Eortman, when in conflict with that of Brandt, there is another ground, equally ■satisfactory, that would forbid it. Having executed, in writing, 'the incomplete parol agreement, in the manner insisted upon by" Hipp & Brandt, Eortman thereby waived any objections he might have had. And he can not be permitted, by parol evidence, to impair the rights of purchasers, or those claiming under them, arising out of the transaction as it was consummated. The parol negotiations between the parties anterior to, or •cotemp oraneously with, the execution of the instruments, are *564 to be regarded as merged in, or concluded by them. The real estate, in the deed from Fortman to Hipp & Brandt, was described merely by metes and bounds. The description in the mortgage from the latter to the former was the same. The deed, bill of sal®, and mortgage, were executed and delivered at the same time, and each must be held to have' been designed by the parties to perform its appropriate office in consummating the sale. The mortgage therefore to Fortman must be held to cover no more property than was included in the deed, and the deed not to include the property sold by the bill of sale-upon a distinct consideration.
There is undoubtedly a limitation-upon the right of parties to change, by their agreements, the status of property from that which the law would assign to it in the absence of a special agreement.
“Whether an agreement, shall preserve the character of personalty, in things so affixed to the freehold, as that, but., for such agreement, they would become part of the realty, depends upon their essential character, and the mode in which they are annexed, e. g., whether they can be removed without «srious damage to the freehold, or substantially destroying their own qualities and value.” Ford v. Cobb, 20 N. Y. Rep. 344; Frederick v. Deval, 15 Ind. Rep. 357; Teaff v. Hewitt, 1 Ohio St. Rep. 534, 543; Mott v. Palmer, 1 Hill, 569; Russell v. Richards, 1 Fairf. Rep. 429 ; Mitchell v. Friedley, 10 Barr Rep. 207.
“ It will readily be conceded that the ordinary distinction, between real estate and chattels, exists in the nature of the-subject, and can not, in general, be changed by the convention of the parties. Thus it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams or materials of which the walls of a house are composed. Rights-by way of license might be created in such a subject, but it could not be made alienable as chattels, or' subjected to the general rules by which the succession of that species of property is regulated. But it is otherwise with things which, being originally personal in their nature, are at tached to the realty in such a manner that they may be de *565 ¿ached without being destroyed or materially injured, and without the destruction of, or material injury to, the things real with which they are connected; though their connection with the land or other real estate is such that, in the absence •of an agreement or of any special relation between the parties in interest, they would be part of the real estate.” Ford v. Cobb (before cited), 348.
In the case last named it was held that the agreement, which was evidenced by a chattel mortgage, was effectual against a ■subsequent purchaser of the land without notice. There are •other cases to the same effect. But it would seem to be the sounder rule, and more in accordance with the policy of our recording laws, to require that actual .severance, or notice of a binding agreement to sever, should be held necessary to deprive the purchaser of the right to fixtures, or appurtenances .to the freehold. 2 Smith’s L. C. 259.
The question, however, does not ai’ise in the present case. The controversy is between Fortman, one of the parties to the ■agreement, and the mortgagees of the other, claiming the property in dispute under their chattel mortgages. On the •question of fact as to whether the removal would materially ■injure the building, or the value of the articles, the evidence is conflicting; and it must be assumed that the court found that such injury would not ensue. Without regard, therefore, ,-to what might have been the character of a portion of the property referred to in the bill of sale, in the absence of any .■agreement between the parties, yet, as between Fortman and •the mortgagees of Hipp & Brandt, we discover no sufficient grounds upon which to disturb the judgment.
The case of Richardson v. Copeland (6 Gray’s R. 536), referred to by the counsel of Fortman, was a controversy, in ■regard to a boiler and engine, between a purchaser at judicial sale and the mortgagee in a chattel mortgage. The sale had ■been ordered for the foreclosure of certain real estate mortgages, some of which had been given prior and some subse■quently to the chattel mortgage. The purchaser at judicial .sale took the interest of all the mortgagees whose m irtgages ¡had been foreclosed.
*566 It may be that subsequent additions, made by the mortgagor •which, in the absence of an agreement, would become part of the realty, should be held to have acquired that legal character, as to prior mortgagees who were not parties to such agreement; yet it might well be effectual as between the parties and subsequent purchasers with notice.
The remaining question is as to the large copper kettle, the distilling apparatus, and the tub. The evidence as to these articles is conflicting. That on behalf of the parties claiming them to be personal chattels, is to the effect that they were placed in the building merely for the purposes of the business, and could easily be removed, without injury to the building. The evidence, on the part of Eortman, is to the contrary effect. The distilling apparatus cost $100 — the copper kettle, $110, and the tub, $60.
In the cellar was a furnace, and the kettle was set over it, and surrounded by brickwork, doubtless to keep it to its place and confine the heat from the furnace. It extended to the floor above the cellar. To construct this furnace and the brickwork around the kettle, is said to have required four loads of stone and about ■ twenty-five thousand bricks. The kettle was put in position in separate pieces and would have to be taken apart to remove it. But.it does not appear that the furnace or the brickwork would have to be taken down, or would be injured by the removal of the kettle. The latter, on account of its size, could not be put in as a whole, and was,, therefore, put together where it was to rest; and, for the same reason, it would require to be taken apart to remove it. This was doubtless a matter of convenience. It does not appear but that, from its construction, it could easily be taken apart,- and again put together without injury. If it had been small enough it could have been set and removed as a whole. Its size was determined by the demands of the business, and would not change its legal character. It could not be said to have become part of the realty as an incident to the wall, by which it was surrounded; for, rather, it was the principal, as an implement in the business, and the wall was constructed for the more convenient use of it as a chattel. The evidence, in *567 regard to the other two articles, is more equivocal and the decision in regard to the kettle is decisive of their character.
“ To change the character of an article from a chattel to a fixture, there should be some positive act and intent to that effect on the part of the person annexing it to the building, and if the intent is in doubt, upon an inspection of the property itself, taking into consideration its nature, the mode, extent, and purpose of its annexation, it should be held to be personal ■property.” Hill v. Wentworth, 28 Verm. Rep. 329.
The peculiarities in the structure of the building in question, and its inadaptation to business other than that of brewing, and the relative bearing of the additions, in controversy, to such peculiarities of structure, if such exist, do not appear from the evidence.
The decision, in this case, does not conflict with the cases of Teaff v. Hewitt, 1 Ohio St. Rep. 572; Allison v. Cane, 15 Ohio Rep. 729; Sparks v. The State Bank, 7 Blackf. 469, nor with the principle of the case of Winslow v. The Merchants Bank, 4 Metc. 306.
The mode of annexation, alone, will not determine the character of the property annexed. The same mode may exist and yet the property be personal in the one case, and real in the other. Eor example — trees growing in a nursery are annexed to the soil in the same way as trees growing in an orchard. But in the former case they are cultivated for the purpose of trade, in the latter as a permanent accession to the land. The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and ao *568 quire and retain its legal character. As, however, the combined use or operation, of both the real and personal property, is necessary for the business, the difficulty in any given case, consists in determining on which side of the dividing line to assign the particular article in question. This must in a great degree be determined by the circumstances of each particular case.
The judgment is affirmed.
Brinkerhoee, C J., and Scott, Ranney and Wilder, JJ., concurred.